1

2

3

4

5

6

7

8

9

The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

10

11

12

13

14

15

16

17

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                      PLAINTIFF,<br><br>    v.<br><br>U.S. DEPARTMENT OF COMMERCE;<br>HOWARD LUTNICK in his official<br>capacity as Secretary of Commerce;<br>NATIONAL OCEANIC AND<br>ATMOSPHERIC ADMINISTRATION;<br>and LAURA GRIMM in her official<br>capacity as Acting Administrator of<br>NOAA,<br><br>                  DEFENDANTS. | NO. 2:25-CV-1507-MJP<br><br>PLAINTIFF'S MOTION FOR<br>PRELIMINARY INJUNCTION<br><br>NOTE ON MOTION CALENDAR:<br>SEPTEMBER 16, 2025<br><br>ORAL ARGUMENT REQUESTED |

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

      A.   Washington's Awards ............................................................................... 2

      B.   To Align with President Trump's Directives and Priorities, Defendants
           Abruptly and Unlawfully Terminated Washington's Awards ................................. 3

III.  REGULATORY BACKGROUND ....................................................................... 4

IV.   LEGAL STANDARD ......................................................................................... 7

V.    ARGUMENT ...................................................................................................... 7

      A.   This Court Has Subject Matter Jurisdiction .............................................. 7

      B.   Washington is Likely to Succeed on the Merits of Its Spending Clause Claim ........ 9

      C.   Washington is Likely to Succeed on the Merits of Its APA Claims ...................... 10

           1.   Defendants took final agency action ............................................. 10

           2.   Defendants violated the Guidance ................................................ 11

           3.   Defendants' terminations are arbitrary and capricious ................... 14

      D.   Defendants' Actions Have Caused, and Will Continue to Cause, Irreparable
           Harm to Washington ............................................................................... 19

      E.   The Balance of Equities Tips Sharply in Washington's Favor and an
           Injunction is in the Public Interest ......................................................... 24

VI.   CONCLUSION ................................................................................................. 25

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

i

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1

## TABLE OF AUTHORITIES

2

3

### <u>Cases</u>

4
*adidas America, Inc. v. Skechers USA, Inc.*,
 890 F.3d 747 (2018) .......................................................................................................... 23

5
*Am. Beverage Ass'n v. City & County of San Francisco*,
6
 916 F.3d 749, 758 (9th Cir. 2019) (en banc) ...................................................................... 25

7
*Am. Ctr. for Int'l Labor Solidarity v. Chavez-DeRemer*,
 --- F.Supp.3d ---, No. CV 25-1128, 2025 WL 1795090 (D.D.C. June 30, 2025) ................... 8

8
*Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*,
9
 703 F. Supp. 3d 126 (D.D.C. 2023) ...................................................................................... 8

10
*Ariz. Dream Act Coal. v. Brewer*,
 757 F.3d 1053 (9th Cir. 2014) ............................................................................................ 19

11
*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
12
 548 U.S. 291 (2006) ....................................................................................................... 9, 10

13
*Armstrong v. Exceptional Child Ctr., Inc.*,
 575 U.S. 320 (2015) ............................................................................................................ 9

14
*Baird v. Bonta*,
15
 81 F.4th 1036 (9th Cir. 2023) ............................................................................................ 25

16
*Battle v. FAA*,
 393 F.3d 1330 (D.C. Cir. 2005) ........................................................................................... 11

17
*Bennett v. Spear*,
18
 520 U.S. 154 (1997) ...................................................................................................... 10, 11

19
*Bowen v. Massachusetts*,
 487 U.S. 879 (1988) ......................................................................................................... 7, 8

20
*C.G.B. v. Wolf*,
21
 464 F. Supp. 3d 174 (D.D.C. 2020) .................................................................................... 24

22
*California v. Azar*,
 911 F.3d 558 (9th Cir. 2018) .............................................................................................. 19

23
*City of Houston v. Dep't of Hous. & Urb. Dev.*,
24
 24 F.3d 1421 (D.C. Cir. 1994) ........................................................................................... 23

25
*Climate United Fund v. Citibank, N.A.*,
 Civ. No. 25-698, 2025 WL 1131412 (D.D.C. Apr. 16, 2025) ........................................ 11, 22

26

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

ii

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

*County of Santa Clara v. Trump,*
  250 F. Supp. 3d 497 (N.D. Cal. 2017) ................................................................. 21

*Dep't of Com. v. New York,*
  588 U.S. 752 (2019) ................................................................................................ 15

*DHS v. Regents of the Univ. of California,*
  591 U.S. 1 (2020) .................................................................................................... 18

*Encino Motorcars, LLC v. Navarro,*
  579 U.S. 211 ...................................................................................................... 17, 18

*Erie Boulevard Hydropower, LP v. FERC,*
  878 F.3d 258 (D.C. Cir. 2017) .............................................................................. 15

*FCC v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009) ................................................................................................ 17

*FCC v. NextWave Pers. Commc'ns Inc.,*
  537 U.S. 293 (2003) ................................................................................................ 11

*Fischer v. United States,*
  603 U.S. 480 (2024) ................................................................................................ 14

*Flathead-Lolo-Bitterroot Citizen Task Force,*
  98 F.4th 1180 (9th Cir. 2024) ............................................................................... 25

*Gale v. First Franklin Loan Servs.,*
  701 F.3d 1240 (9th Cir. 2012) ............................................................................... 12

*HIAS, Inc. v. Trump,*
  985 F.3d 3096 (4th Cir. 2021) ............................................................................... 23

*Kansas v. United States,*
  249 F.3d 1213 (10th Cir. 2001) ............................................................................. 19

*Kern Cnty. Farm Bureau v. Allen,*
  450 F.3d 1072 (9th Cir. 2006) ............................................................................... 14

*League of Women Voters of United States v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) .............................................................................. 23, 24

*Los Altos Boots v. Bonta,*
  562 F. Supp. 3d 1036 (E.D.Cal. 2021) .................................................................. 22

*Megapulse, Inc. v. Lewis,*
  672 F.2d 959 (D.C. Cir. 1982) ................................................................................. 8

*Melendres v. Arpaio,*
  695 F.3d 990 (9th Cir. 2012) ................................................................................. 24

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

iii

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

*Metro. Transp. Auth. v. Duffy*,
   Civ. No. 25-1413, 2025 WL 1513369 (S.D.N.Y. May 28, 2025) .............................. 11, 12, 22

*Michigan v. DeVos*,
   481 F. Supp. 3d 984 (N.D. Cal. 2020) ................................................................................ 21

*Michigan v. EPA*,
   576 U.S. 743 (2015) ............................................................................................................ 15

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .................................................................................................. 15, 16, 17

*N. Cheyenne Tribe v. Norton*,
   503 F.3d 836 (9th Cir. 2007) ............................................................................................. 24

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
   567 U.S. 519 (2012) .............................................................................................................. 9

*New York v. Trump*,
   490 F. Supp. 3d 225 (D.D.C. 2020) ................................................................................... 19

*New York v. Trump*,
   769 F.Supp.3d 119 (D.R.I. 2025) ....................................................................................... 21

*Noel Canning v. NLRB*,
   705 F.3d 490 (D.C. Cir. 2013), *aff'd*, 573 U.S. 513 (2014) ............................................... 12

*Ohio v. Env't Prot. Agency*,
   603 U.S. 279 (2024) ........................................................................................................... 14

*Open Cmtys. All. v. Carson*,
   286 F.Supp.3d 148 (D.D.C. 2017) ..................................................................................... 24

*Pacito v. Trump*,
   772 F. Supp. 3d 1204 (W.D. Wash. 2025) ................................................................... 7, 8, 9

*Pennhurst State Sch. & Hosp. v. Halderman*,
   451 U.S. 1 (1981) ................................................................................................................. 9

*Penobscot Nation v. Frey*,
   3 F.4th 484 (1st Cir. 2021) ................................................................................................. 14

*Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health & Hum. Servs.*,
   328 F. Supp. 3d 1133 (E.D. Wash. 2018) .......................................................................... 21

*Preminger v. Principi*,
   422 F.3d 815 (9th Cir. 2005) ............................................................................................. 25

*Richardson v. Morris*,
   409 U.S. 464 (1973) .............................................................................................................. 9

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

iv

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) ........................................................................... 24

*Roman v. Wolf*,
   977 F.3d 935 (9th Cir. 2020) ........................................................................ 7, 24

*Ryder v. Union Pac. R.R. Co.*,
   945 F.3d 194 (5th Cir. 2019) ............................................................................. 13

*S. Educ. Found. v. Dep't of Educ.*,
   -- F. Supp. 3d--, 2025 WL 1453047 (D.D.C. May 21, 2025) at *14-15 ............... 23

*San Francisco Unified Sch. Dist. v. AmeriCorps*,
   No. 25-CV-02425, 2025 WL 1713360 (N.D. Cal. 2025) ..................................... 10

*SEC v. Chenery Corp.*,
   332 U.S. 194 (1947) ......................................................................................... 15

*Sierra Club v. Salazar*,
   177 F. Supp. 3d 512 (D.D.C. 2016) ................................................................... 17

*South Dakota v. Dole*,
   483 U.S. 203 (1987) ......................................................................................... 10

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
   136 F.3d 641 (9th Cir. 1998) ............................................................................... 7

*Turner v. U.S. Agency for Global Media*,
   502 F. Supp. 3d 333 (D.D.C. 2020) ................................................................... 25

*City of Los Angeles v. Barr*,
   929 F.3d 1163 (9th Cir. 2019) .............................................................................. 9

*United Aeronautical Corp. v. U.S. Air Force*,
   80 F.4th 1017 (9th Cir. 2023) .......................................................................... 7, 8

*United States ex rel. Accardi v. Shaughnessy*,
   347 U.S. 260 (1954) ......................................................................................... 11

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ........................................................................... 20

*Verizon v. FCC*,
   740 F.3d 623 (D.C. Cir. 2014) ........................................................................... 17

*Wash. v Trump*,
   768 F.Supp.3d 1239 (W.D. Wash 2025) ............................................................ 25

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7, 20 (2008) .................................................................................... 7, 24

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

v

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

*Woonasquatucket River Watershed Council*,
   778 F. Supp. 3d 440 (D.R.I. 2025) ............................................................ 23

## **Statutes**

5 U.S.C. § 306(b) ............................................................................................ 13

5 U.S.C. § 702 ................................................................................................... 7

5 U.S.C. § 704 ............................................................................................ 7, 10

5 U.S.C. § 706 ................................................................................................. 11

5 U.S.C. § 706(2)(A) ................................................................................. 11, 14

31 U.S.C. § 1120(a)(3) ................................................................................... 13

31 U.S.C. § 1122 ............................................................................................. 13

## **Other Authorities**

78 Fed. Reg. 78590 (Dec. 26, 2013) ..................................................... 4, 5, 13

85 Fed. Reg. 49506 (Aug. 13, 2020) ..................................................... 5, 6, 13

89 Fed. Reg. 30046 (Apr. 22, 2024) ...................................................... 5, 6, 13

Exec. Order No. 14151, 90 Fed. Reg. 8339, 8339-40 (Feb. 26, 2025) ........... 3

Exec. Order No. 14222, 90 Fed. Reg. 11095 (Feb. 26, 2025) ......................... 4

Exec. Order No. 14260, 90 Fed. Reg. 15513 (April 8, 2025) .......................... 4

Inflation Reduction Act of 2022, Pub. L. No. 117-169,
   136 Stat. 2028 (2022) ................................................................................. 23

The Spending Clause of the U.S. Constitution art. I, § 8, cl. 1 ........................ 9

## **Regulations**

2 C.F.R. Part 200 .............................................................................................. 4

2 C.F.R. § 200.202 ............................................................................................ 6

2 C.F.R. § 200.210(b) ...................................................................................... 13

2 C.F.R. § 200.211 ........................................................................................... 11

2 C.F.R. § 200.301 ............................................................................................ 6

2 C.F.R. § 200.340 .............................................................................. 1, 5, 6, 17

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

vi

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

2 C.F.R. § 200.340(a)(1)-(3) ........................................................................................ 14

2 C.F.R. § 200.340(a)(2) (2021) ..................................................................................... 7

2 C.F.R. § 200.340(b) ............................................................................................ 11, 14

2 C.F.R. § 200.342 ................................................................................................. 11, 14

2 C.F.R. § 1327.101 ........................................................................................................ 4

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

vii

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

# I.    INTRODUCTION

The Trump administration is carrying out an unprecedented and unlawful campaign to terminate billions of dollars in federal funding appropriated by Congress. For decades, federal agencies, including the U.S. Department of Commerce (Commerce) and the National Oceanographic and Atmospheric Administration (NOAA), have carried out statutory directives consistent with regulatory mandates when making, renewing, and terminating awards of congressionally appropriated funds. The Trump administration upended all that on January 20, 2025, when President Trump began issuing a flurry of executive orders and directives commanding agencies to terminate huge swaths of funding deemed inconsistent with his priorities. On the chopping block: more than $9 million in funding Washington relied on to help communities disproportionately affected by the adverse effects of climate change become more resilient. The termination of Washington's equity-focused climate resilience awards aligns with Trump administration directives to eradicate climate action and end efforts to address systemic inequities and environmental injustice.

Following these executive commands, Defendants terminated two Washington awards on the stated basis that the funded activities—activities that until May 2025, Defendants enthusiastically supported—are misaligned with **new** Trump administration priorities. Defendants unlawfully rely on 2 C.F.R. § 200.340,[1] which limits agency terminations to circumstances where the terms and conditions of the award expressly allow termination on the basis that the award no longer effectuates the program goals or agency priorities identified at the time of the award. Defendants erroneously contend that the simple phrase "no longer effectuates agency priorities" provides them unconstrained authority to unilaterally terminate awards at their whim, with no notice or process, if the agency alleges the award activities are misaligned with **new** presidential priorities.

---

[1] Plaintiffs refer to both 2 C.F.R. § 200.340(a)(4) (2024) and its predecessor 2 C.F.R. § 200.340(a)(2) (2021).

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

1

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    Defendants' terminations contravene federal regulations governing the administration
2    of awards and dispense with the regular procedures afforded to awardees under those
3    regulations, in violation of the Administrative Procedure Act. Defendants' actions also
4    disclaim agency responsibility and violate the Spending Clause of the U.S. Constitution in
5    service of changing executive preference.

6    Defendant's unlawful terminations are causing concrete and ongoing harm to
7    Washington. Washington has invested time, effort, and non-federal funds into developing and
8    carrying out critical resilience programs in communities disproportionately affected by climate
9    change as a result of systemic inequities. Climate change is increasing the frequency and
10   severity of life-threatening hazards like heatwaves, wildfires, drought, and flooding in
11   Washington, as well as slower moving but devastating sea level rise and loss of mountain
12   snowpack. Terminating Washington's funding mid-award terminates NOAA-approved climate
13   resilience programs; renders the state's prior work and investments in these programs
14   meaningless; eliminates and imperils jobs; and impairs Washington's comprehensive statewide
15   climate resilience strategy at exactly the time it is most needed. Mere months before
16   terminating Washington's climate resilience awards, NOAA reported that 2024 was the
17   warmest year since the start of global records in 1850.[2]

## II.    FACTUAL BACKGROUND

### A.    Washington's Awards

20   Washington applied for and received funding from NOAA for two proposals to
21   strengthen Washington's climate resilience with a focus on disproportionately affected
22   communities. On September 1, 2023, NOAA awarded the Washington State Department of
23   Ecology (Ecology) $250,000 for *Advancing an Equitable Framework for Coastal Resilience in*
24   *Washington State* (EFCR), a Coastal Zone Management Project of Special Merit funded under

---

[2] NOAA Global Climate Report, https://www.ncei.noaa.gov/access/monitoring/monthly-report/global/202413 (last accessed Aug. 5, 2025).

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

2

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1     the Coastal Zone Management Act. McGerr Decl., Ex. C, p.73. On September 11, 2024,

2     NOAA awarded the Washington State Board for Community and Technical Colleges (SBCTC)

3     $9,257,231 for *Tribal Stewards: Cultivating Tribal Leadership & Equity in Natural Resource*

4     *Stewardship & Climate Resilience* (Tribal Stewards), a Climate-Ready Workforce Initiative

5     funded through the Inflation Reduction Act and National Sea Grant College Act. Esquivido

6     Decl., Ex. A, p.20.

7         The purpose of EFCR was to reduce environmental and health disparities in

8     overburdened communities by improving how Washington's Coastal Zone Management

9     Program (CZMP) deploys key services and supports local efforts to address coastal hazards

10    and build long-term community resilience. McGerr Decl.¶11. Ecology's award "constitutes an

11    obligation of Federal funding." *Id.*, Ex. C, p.73. The purpose of Tribal Stewards was to educate

12    and employ tribal leaders and non-tribal natural resource managers adept in climate resilience

13    through partnerships between Washington colleges, tribes, and employers. Esquivido Decl.¶17.

14    SBCTC's award "constitutes…[an] obligation of Federal funding," and expressly "contains all

15    terms and conditions of the grant award." *Id.*¶27, Ex. A, p.21. It includes a NOAA-approved

16    budget for $9,257,231 over the course of the performance period—August 1, 2024, through

17    July 31, 2028—and authorized the *entire* amount of $9,257,231. *Id.*, p.22.

18 **B.**     **To Align with President Trump's Directives and Priorities, Defendants Abruptly**
         **and Unlawfully Terminated Washington's Awards**
19

20         On Inauguration Day, the President issued Executive Order 14151 targeting diversity,

21    equity, inclusion, and accessibility efforts. Through Executive Order 14151, the President

22    mandated agencies to, among other things, provide to the Director of the U.S. Office of

23    Management and Budget (OMB) a list of awardees who received funding "to provide or

24    advance DEI, DEIA, or 'environmental justice' programs, services, or activities since January

25    20, 2021," and to terminate all "'equity-related'" awards. Exec. Order No. 14151, 90 Fed. Reg.

26    8339, 8339-40 (Feb. 26, 2025). The following month, President Trump formally directed

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

3

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

agencies—and the DOGE employees assigned to these agencies—to terminate funding or "reallocate spending to…advance the [new] policies of [his] Administration." Exec. Order No. 14222, 90 Fed. Reg. 11095, 11096 (Feb. 26, 2025). In April 2025, the President took aim at states' attempts to address climate change within their own borders, describing such efforts as "burdensome and ideologically motivated" and going so far as to direct the Attorney General of the United States to identify state laws "purporting to address 'climate change' or involving 'environmental, social, and governance' initiatives, 'environmental justice,' carbon or 'greenhouse gas' emissions" and take action to "stop the enforcement of [those] laws." Exec. Order No. 14260, 90 Fed. Reg. 15513, 15514 (April 8, 2025).

On May 5, 2025, in service of implementing Trump administration directives, Defendants notified SBCTC and Ecology they would cease funding, effective immediately, for the Tribal Stewards and EFCR awards, respectively. McGerr Decl., Ex. F, p.87; Esquivido Decl., Ex. E, p.300. In each notice, NOAA stated it terminated the award because it was misaligned with *new* Trump administration priorities. Neither notice cited the program goals or agency priorities identified at the time the grant was awarded. Defendants' termination immediately and permanently deprived Washington—without notice or process—of more than $9 million in obligated funds. As detailed in Section V.D, *infra*, and supporting declarations, the abrupt loss terminations harmed and, in the absence of preliminary relief, will continue to harm Washington and its residents.

## III.    REGULATORY BACKGROUND

The administration, including termination, of Washington's awards is governed under OMB regulations (Guidance), 2 C.F.R. Part 200, as adopted by NOAA pursuant to 2 C.F.R. § 1327.101. OMB promulgated the Guidance in 2013 to "streamline" federal grantmaking and "strengthen" oversight by "provid[ing] a governmentwide framework for grants management." 78 Fed. Reg. 78590 (Dec. 26, 2013). As part of that framework, agencies must provide "sufficient information to help an applicant make an informed decision about whether to

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

4

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

submit an application" for funding, including by fully describing the program to be funded and the agency's "priorities" in making selections. *Id.* at 78622. OMB revised the Guidance in 2020 to improve award "performance to achieve program results," 85 Fed. Reg. 49506, 49507 (Aug. 13, 2020), and again in 2024 to, in part, "clarify[] certain sections of the prior version of the guidance." 89 Fed. Reg. 30046 (Apr. 22, 2024).

NOAA cited 2 C.F.R. § 200.340(a)(2) (2021) as authority to terminate EFCR and 2 C.F.R. § 200.340 (2024) as authority to terminate Tribal Stewards. Under both versions agencies must "clearly and unambiguously" identify termination provisions in the terms and conditions of an award. And termination based on an award no longer serving agency priorities is limited to circumstances in which the agency has specific evidence that the award no longer effectuates the priorities the award identified at the time of the award (i.e., in the notice of funding opportunity or NOFO). Despite a change in structure and small change in the language of the provision between 2020 and 2024, no version of § 200.340 authorizes an agency to terminate an award on the basis that it no longer effectuates agency priorities unless that basis is expressly stated in the terms and conditions of the award and no version authorizes an agency to terminate an award merely because agency priorities shifted during the performance period for the award.

In the 2020 preamble, OMB made clear that agencies must "make recipients aware, in a clear and unambiguous manner, of the termination provisions in § 200.340, including the applicable termination provisions in the…regulations." *See* 85 Fed. Reg. at 49542 (explaining that agencies "must clearly and unambiguously articulate the conditions under which a Federal award may be terminated in their applicable regulations ***and*** in the terms and conditions of Federal awards." (emphasis added)). OMB provided examples of circumstances in which an agency may appropriately terminate an award pursuant to 2 C.F.R. § 200.340(a)(2): "if additional evidence reveals that a specific award objective is ineffective at achieving program goals" or if "additional evidence…cause[s] the…agency to significantly question the feasibility

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

5

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

of the ***intended objective of the award***." *Id.* at 49507-08. (emphasis added). Consistent with its intent to "prioritize ongoing support to [] awards that meet program goals," which are goals and objectives established during the program planning and design, 2 C.F.R. § 200.301, OMB emphasized that § 200.340 is "linked to ***performance goals of the program*** (§ 200.301)." 85 Fed. Reg. at 49507 (emphasis added). Agencies must engage in careful program planning and design, including "set[ting] priorities" and "identif[ying] targets of opportunity" for funding. *Id.* Critically, agencies must design programs and establish the "goals" and "objectives" for awards "***before*** the applications are solicited." *Id.* (emphasis added); 2 C.F.R. § 200.202.

When OMB amended the Guidance in 2024, it reiterated the meaning of the relevant termination provision. OMB explicitly clarified that neither the new nor the prior version of the provision gives agencies unfettered discretion to unilaterally terminate awards. Rather, "[t]he new paragraph (a)(4) ***continues*** to provide that a Federal award may be terminated by the Federal agency…pursuant to the terms and conditions of the Federal Award." 89 Fed. Reg. at 30089 (emphasis added). In other words, agencies may terminate an award that "no longer effectuates the program goals or agency priorities," identified at the time of the award "[p]rovided that the language is included in the terms and condition of the award." *Id.* OMB could not have been clearer, stating: "The revised version of paragraph (a)(4) also explains that this may include a term and condition allowing termination by the Federal agency…, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." *Id.* This is the only reading of § 200.340(a)(4) that can be squared with 2 C.F.R. § 200.340(b), which OMB describes as "underscoring the need for agencies…to clearly and unambiguously communicate termination conditions in the terms and conditions of the award." *Id.* Indeed, in response to comments that § 200.340(a)(2) could allow agencies to "arbitrarily terminate awards without sufficient cause," OMB made clear that "as written agencies are not able to terminate grants arbitrarily." 85 Fed. Reg. at. 49509.

OMB revised the relevant provision in 2024 not to effect a substantive change, but to

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

6

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1  avoid any doubt as to its meaning. Thus, agencies may only terminate an award pursuant to

2  § 200.340(a)(2) (2021) or (a)(4) (2024) if: (1) the subsection was "clearly and unambiguously"

3  specified in the award as a basis for termination; (2) the agency concludes that the award is no

4  longer advancing the program goals or agency priorities identified at the time of the award; and

5  (3) that conclusion is based on "additional evidence" demonstrating that the award "no longer"

6  serves those program goals or agency priorities.

7  **IV.    LEGAL STANDARD**

8  A preliminary injunction is warranted where the moving party establishes (1) it is likely

9  to succeed on the merits, (2) irreparable harm is likely absent preliminary relief, (3) the balance

10  of equities tips in favor of the movant, and (4) an injunction is in the public interest. *Winter v.*

11  *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The balance of the equities and public

12  interest factors merge when the government is a party. *Roman v. Wolf*, 977 F.3d 935, 940-41

13  (9th Cir. 2020).

14  **V.    ARGUMENT**

15  **A.    This Court Has Subject Matter Jurisdiction**

16  In the Ninth Circuit, district courts retain jurisdiction over APA claims where (1) a

17  plaintiff seeks relief other than money damages (prohibited by 5 U.S.C. § 702); (2) the relief

18  sought is not expressly or impliedly forbidden by any other statute (prohibited by § 702); and

19  (3) the plaintiff has no other adequate remedy (required by § 704). *Pacito v. Trump*, 772 F.

20  Supp. 3d 1204, 1214 (W.D. Wash. 2025) (citing *United Aeronautical Corp. v. U.S. Air Force*,

21  80 F.4th 1017, 1022 (9th Cir. 2023); *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d

22  641, 645 (9th Cir. 1998)). Washington plainly clears each hurdle.

23  The Supreme Court has carefully distinguished "money damages," which substitute for

24  a suffered loss, from "specific remedies" that "attempt to give the plaintiff the very thing to

25  which he was entitled." *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988). Because

26  Washington seeks a specific equitable remedy—declaration as to the meaning of a regulation,

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

7

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1 vacatur of unlawful agency actions, and an injunction compelling Defendants to comply with

2 regulatory and constitutional duties, *see* Dkt. 1 at 45-46, its lawsuit is not a disguised contract

3 claim against the United States belonging to the Court of Federal Claims (CFC). Courts use the

4 *Megapulse* test to determine whether an APA action seeking injunctive and declaratory relief is

5 "a 'disguised' breach-of-contract claim" by looking to "(1) 'the source of the rights upon

6 which the plaintiff bases its claims' and (2) 'the type of relief sought (or appropriate).'" *United*

7 *Aeronautical Corp.*, 80 F.4th at 1026 (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968

8 (D.C. Cir. 1982)). "If rights and remedies are *statutorily* or *constitutionally* based, then district

9 courts have jurisdiction; if rights and remedies are *contractually* based then only the [CFC]

10 does, even if the plaintiff formally seeks injunctive relief." *Id.* The test is "akin to a well-

11 pleaded complaint rule…. The Tucker Act does not bar an APA action if the plaintiff's rights

12 and remedies, as alleged, are noncontractual." *Id.* It does not matter that the equitable relief

13 could later result in the disbursement of money: "The fact that a judicial remedy may require

14 one party to pay money to another is not a sufficient reason to characterize the relief as 'money

15 damages.'" *Bowen*, 487 U.S. at 893; *Pacito*, 772 F. Supp. 3d at 1214.

16   Where, as here, Washington challenges Defendants' terminations as arbitrary,

17 capricious, and contrary to regulatory and constitutional law, district courts have jurisdiction.

18 *Bowen*, 487 U.S. at 905; *Pacito*, 772 F. Supp. 3d at 1215-16. Moreover, Defendants would

19 have to demonstrate that their cooperative agreements are "contracts" enforceable under the

20 Tucker Act—a challenge given this Court's precedent. *Pacito*, 772 F. Supp. 3d at 1215; *see*

21 *also Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*, 703 F. Supp. 3d 126, 133 (D.D.C.

22 2023) (holding USAID cooperative agreement is not a contract absent tangible benefits to the

23 federal agency); *Am. Ctr. for Int'l Labor Solidarity v. Chavez-DeRemer*, --- F.Supp.3d ---, No.

24 CV 25-1128, 2025 WL 1795090, at *13–14 (D.D.C. June 30, 2025) (same). Even if this Court

25 found CFC jurisdiction theoretically possible, the CFC cannot grant Washington the equitable

26 relief it seeks because it "has no power to grant equitable relief." *Richardson v. Morris*, 409

PLAINTIFF'S MOTION FOR     8    ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION         Environmental Protection Division
No. 2:25-cv-1507-MJP          800 Fifth Avenue STE 2000
                Seattle, WA 98104
                (206) 464-7744

1    U.S. 464, 465 (1973); *see also Pacito*, 772 F. Supp. 3d at 1216. This case cannot be shunted to

2    a court that cannot provide the relief Washington seeks.

3    **B.        Washington is Likely to Succeed on the Merits of Its Spending Clause Claim**

4            Federal courts possess the power in equity to grant injunctive relief "with respect to

5    violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*, 575

6    U.S. 320, 326-27 (2015). The Spending Clause of the U.S. Constitution, art. I, § 8, cl. 1,

7    provides that Congress—not the Executive—"shall have Power To lay and collect Taxes,

8    Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and

9    general Welfare of the United States." "Though Congress' power to legislate under the

10   spending power is broad, it does not include surprising participating States with post

11   acceptance or 'retroactive' conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S.

12   1, 25 (1981). States must have fair notice, so they may "voluntarily and knowingly" accept

13   conditions attached to federal spending. See *id.* at 17, 25; *Nat'l Fed'n of Indep. Bus. v.*

14   *Sebelius*, 567 U.S. 519, 583-84 (2012); *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175, n.6

15   (9th Cir. 2019) (applying Spending Clause constraints to "middleman agencies" charged with

16   administering funds). "States cannot knowingly accept conditions of which they are 'unaware'

17   or which they are 'unable to ascertain.'" *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548

18   U.S. 291, 296 (2006) (quoting *Pennhurst*, 451 U.S. at 17). Thus, "if Congress intends to

19   impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst*,

20   451 U.S. at 17.

21           Defendants' terminations unlawfully apply new conditions to Washington's awards in

22   violation of the Spending Clause.

23           *First*, Defendants' new priorities are impermissibly vague. *See Pennhurst*, 451 U.S. at

24   17. Defendants state that Washington's award activities are misaligned with *new* Trump

25   administration priorities vaguely referring to reducing the "cost and size" of government and

26   attempting to characterize performance measures as "priorities." McGerr Decl., Ex. F., p.87;

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP                    9                    ATTORNEY GENERAL OF WASHINGTON
                                                            Environmental Protection Division
                                                            800 Fifth Avenue STE 2000
                                                            Seattle, WA 98104
                                                            (206) 464-7744

1   Esquivido Decl., Ex. E, p.300. It is impossible to discern the priorities against which

2   Washington's awards were evaluated for "alignment," yet Defendants rely solely on these new

3   "priorities" to terminate. Defendants' termination notices "[are] fatally ambiguous because

4   [they] fail[] to clarify what conduct is proscribed." *See San Francisco Unified Sch. Dist. v.*

5   *AmeriCorps*, No. 25-CV-02425, 2025 WL 1713360, at \*18 (N.D. Cal. 2025) (quotation

6   omitted).

7         *Second*, Defendants seek to retroactively apply new priorities to previously awarded

8   and obligated funds. Defendants announced the priorities for each award in the respective

9   NOFOs, McGerr Decl., Ex. A, p.15-17; Esquivido Decl. Ex. B p.38-40, and Washington

10  tailored its proposals to those priorities. Even assuming Washington could discern Defendants'

11  new priorities, Defendants cannot retroactively condition Washington's award on aligning with

12  those priorities, of which Washington was "unaware" and could not "knowingly accept," nor

13  should it have to. *Arlington Cent. Sch. Dist. Bd. of Educ*, 548 U.S. at 296. To the extent

14  Defendants seek to impede climate action and/or equity measures, such conditions are also

15  unrelated to purpose of the awards as explicitly identified in the NOFOs. *See South Dakota v.*

16  *Dole*, 483 U.S. 203, 207, 209 (1987) ("[C]onditions on federal grants" must be "reasonably

17  calculated to address th[e] particular…purpose…for which the funds are expended.")

18  C.    **Washington is Likely to Succeed on the Merits of Its APA Claims**

19         1.    **Defendants took final agency action**

20         Defendants' terminations constitute final agency action justiciable under the APA.

21  5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 156, 177-78 (1997) (final agency action marks

22  "consummation of the agency's decisionmaking process" and is "one by which rights or

23  obligations have been determined, or from which legal consequences will flow"). In each

24  termination notice, Defendants informed Washington they would cease funding effective

25  immediately, McGerr Decl., Ex. F, p.87; Esquivido Decl., Ex. E, p.300, marking "the

26  consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178 (quotation

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

10

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1    marks omitted). When SBCTC inquired about objection procedures pursuant to 2 C.F.R.

2    § 200.342, Defendants stated the termination was "not subject to appeal." Esquivido Decl. ¶38,

3    Ex. H, p.442-443. Defendants' terminations are surely actions "by which rights . . . have been

4    determined" and "from which legal consequences [] flow." *Bennett*, 520 U.S. at 178

5    (quotations marks and citation omitted). Washington is subject to terminations based on ***new***

6    priorities—at executive whim—and can no longer access more than $9 million in awarded

7    funds obligated to the state to support climate resilience.

8              **2.        Defendants violated the Guidance**

9              Under the APA, a court shall hold unlawful and set aside agency action, findings, and

10   conclusions that are "not in accordance with law" or that are taken "without observance of

11   procedure required by law." 5 U.S.C. § 706(2)(A), (D). The references to "law" in § 706(2)

12   "mean[], of course, *any* law, and not merely those laws that the agency itself is charged with

13   administering." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003). When a

14   federal agency has adopted "[r]egulations with the force and effect of law," those regulations

15   "supplement the bare bones" of federal statutes. *United States ex rel. Accardi v. Shaughnessy*,

16   347 U.S. 260, 265 (1954). In particular, "agencies may not violate their own rules and

17   regulations to the prejudice of others." *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005).

18             Here, Defendants' terminations are not in accordance with the Guidance for at least

19   three independently sufficient reasons.

20             *First*, Defendants' stated basis for each termination—that the award no longer

21   effectuates agency priorities—is not "clearly and unambiguously" included the terms and

22   conditions of Washington's awards as required under the Guidance. *See* 2 C.F.R.

23   § 200.211(c)(v); 2 C.F.R. § 200.340(b); *Metro. Transp. Auth. v. Duffy*, Civ. No. 25-1413, 2025

24   WL 1513369, at *28 (S.D.N.Y. May 28, 2025) (read "both in isolation and in context," the

25   provision can be invoked only if it "is actually included as a term and condition of the federal

26   award."); *Climate United Fund v. Citibank, N.A.*, Civ. No. 25-698, 2025 WL 1131412, at *16

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

11

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

(D.D.C. Apr. 16, 2025) ("Defendants[] . . . can only terminate a federal award on this basis pursuant to the terms and conditions of the federal award."). In other words, agencies must "state upfront in an award that [they] may [try to] terminate the award based on" the provision "if [they] wish[] to have the ability to exercise that termination in the absence of consent." *Duffy*, 2025 WL 1513369, at *28. To hold otherwise, allowing agencies to terminate on this basis even when it is not specified in that award's terms and conditions, "would undermine the security of all federal awards" and be "at odds with the plain meaning of [the] text." *Id.* Because Defendants failed to "clearly and unambiguously" include termination on the basis that the award no longer effectuates the program goals or agency priorities in Washington's awards, that basis cannot support Defendants' terminations.

   *Second*, even if Washington's awards "clearly and unambiguously" identified that the awards could be terminated if they no longer effectuate agency priorities—they did not—Defendants misconstrue the meaning of the provision, which authorizes agencies to terminate awards that no longer effectuate the specific program goals and agency priorities identified at the time of the award, not just "any" program goals or agency priorities identified whenever the agency wishes. *See Gale v. First Franklin Loan Servs.,* 701 F.3d 1240, 1246 (9th Cir. 2012) (stating that "[the] definite article 'the' particularizes the subject which it precedes and is [a] word of limitation as opposed to [the] indefinite or generalizing force [of] 'a' or 'an.'") (citation omitted, brackets in original); *see also Noel Canning v. NLRB*, 705 F.3d 490, 500 (D.C. Cir. 2013) (in discussing "the," noting that, "[u]nlike 'a' or 'an,' that definite article suggests specificity."), *aff'd*, 573 U.S. 513 (2014).

   Defendants' interpretation also misconstrues the phrase "no longer effectuates." The phrase "no longer," when used as an adverb, as here, means that whatever the phrase modifies was at some time true (e.g., On May 4, Washington had access to more than $9 million in federal funds for climate resilience. The state "no longer" has access to those funds). It can never true, except by coincidence, that an award previously effectuated but "no longer"

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

12

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

effectuates program goals or agency priorities identified after the award was issued because it is impossible for an awardee to intentionally effectuate priorities of which it was unaware, and which did not exist at the time of the award. The scenarios identified by OMB in the preamble to the 2024 Guidance support this reading: an agency can terminate an award when "additional evidence reveals that a specific award objective is ineffective at achieving program goals" or when "additional evidence may cause the…agency to significantly question the feasibility of the intended objective of the award." 85 Fed. Reg. at 49507-08. The examples imply that the original "program goals" and "objectives of the award," which they agency is required to identify in the NOFO remain unchanged and new evidence indicates the award "no longer effectuates" those goals and objectives.

Allowing agencies to terminate mid-award based on changing priorities would run counter to carefully articulated requirements that agencies clearly define their program goals and funding priorities at the outset of the award, provide public notice of these goals and priorities, and measure progress against those defined goals. *See* 89 Fed. Reg. at 30204 (App'x I to Part 200) (stating that agencies must include a "program description" that sets out the "general purpose of the funding and what it is expected to achieve for the public good," the "agency's funding priorities or focus areas, if any," and the "outcomes" the agency "expects recipients to achieve"); 78 Fed. Reg. at 78624 (stating that the award must specify "the outcomes intended to be achieved by the program."); 2 C.F.R. §§ 200.210(b), (c); *see also* 31 U.S.C. § 1122.[3] It would be extraordinary for such sweeping termination power to be buried in a subclause of the Guidance. *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 203 (5th Cir. 2019)

---

[3] Congress has made clear that agencies cannot change priorities on a whim. By statute, agencies may only change priorities through a process that provides adequate notice to Congress. *See, e.g.*, 31 U.S.C. § 1120(a)(3) (mandating that OMB consult with Congress "[w]hen developing or making adjustments to Federal Government priority goals"); 5 U.S.C. § 306(b) (allowing agencies to adjust goals and objectives "to reflect significant changes in the environment in which the agency is operating, with appropriate notification of Congress").

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

13

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1  (stating that agencies "no less than Congress, do not 'hide elephants in mouseholes.'"); *accord*

2  *Penobscot Nation v. Frey*, 3 F.4th 484, 506 (1st Cir. 2021).

3        And while agencies may, consistent with applicable law, change their priorities and use

4  those new priorities in issuing new awards, allowing terminations based on mid-award priority

5  changes would render superfluous many other provisions of the Guidance. *See, e.g.*, 2 C.F.R.

6  §§ 200.340(a)(1)-(3) (circumscribing when agencies can terminate awards); *id.* § 200.340(b)

7  (requiring agency to "clearly and unambiguously specify all termination provisions in the

8  terms and conditions" of the award). These provisions would be unnecessary if agencies could

9  simply change priorities at any time and terminate based on that change. *See, e.g.*, *Fischer v.*

10  *United States*, 603 U.S. 480, 498 (2024) ("Although the Government's all-encompassing

11  interpretation may be literally permissible, it defies the most plausible understanding…and it

12  renders an unnerving amount of [] text mere surplusage.").

13        Defendants do not—and cannot—claim that Washington is no longer effectuating the

14  agency priorities identified at the time of the award. Defendants expressly rely on the awards

15  misalignment with ***new*** Trump administration priorities—priorities that did not exist at the

16  time the awards were issued and thus are not a lawful basis for termination.

17        *Third*, Defendants failed to provide Washington with any "opportunity to object and

18  provide information challenging" the terminations as required under 2 C.F.R. § 200.342.

19  Judicial review of an agency's procedural compliance is "exacting." *See Kern Cnty. Farm*

20  *Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). Defendants failed to follow the simplest

21  of procedures required by law.

22        **3.    Defendants' terminations are arbitrary and capricious**

23        Under the APA, a court shall hold unlawful and set aside agency action, findings, and

24  conclusions that are "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). Agency action must be

25  "reasonable and reasonably explained." *Ohio v. Env't Prot. Agency*, 603 U.S. 279, 292 (2024).

26  In reviewing agency action under that standard, courts look to the "grounds that the agency

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

14

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1  invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015); *see also Motor*

2  *Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50

3  (1983). Courts consider "whether the [agency] examined 'the relevant data' and articulated 'a

4  satisfactory explanation' for [its] decision, 'including a rational connection between the facts

5  found and the choice made.'" *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (quoting

6  *Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43). Agency action is also arbitrary and capricious if

7  the agency "offered an explanation for its decision that runs counter to the evidence before [it],

8  or is so implausible that it could not be ascribed to a difference in view or the product of

9  agency expertise." *Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43.

10        Here, Defendants' terminations are arbitrary and capricious for at least five

11  independently sufficient reasons.

12        *First*, Defendants' terminations are arbitrary and capricious because they fail to comply

13  with the Guidance. *Erie Boulevard Hydropower, LP v. FERC*, 878 F.3d 258, 269 (D.C. Cir.

14  2017) (citation modified) ("[A]n agency is bound by its own regulations," and therefore "if an

15  agency action fails to comply with its regulations, that action may be set aside as arbitrary and

16  capricious."). *See* Section V.c.2, *supra*.

17        *Second*, even assuming Defendants could terminate Washington's awards based on

18  misalignment with *new* priorities, Defendants failed to adequately identify those priorities.

19  Defendants cryptically assert that Tribal Stewards and EFCR activities "are no longer aligned

20  with [current programmatic goals and mission priorities], nor relevant to the current focus of

21  the Administration's objectives," leaving Washington left to guess at the goals and priorities.

22  *See SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) (holding agency action is arbitrary

23  and capricious where party is "compelled to guess at the theory underlying the agency's

24  action"). To the extent that Defendants attempt to characterize performance measures as

25  "priorities," *see* Esquivido Decl., Ex. E, p.300. Defendants failed to provide any explanation

26  of how Washington's award activities fail to align. *Dep't of Com. v. New York*, 588 U.S. 752, 785

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

15

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1   (2019) (The "reasoned explanation requirement...is meant to ensure that agencies offer

2   genuine justifications" for important decisions, reasons that can be scrutinized by courts and

3   the interested public.").

4       *Third*, Defendants drew conclusions contrary to the facts. They did not—and could

5   not—provide any rational basis for their conclusion that Tribal Stewards "lacks specific

6   performance indicators, timelines, or mechanisms for evaluating success," or their assertion

7   that EFCR "proposes yet another layer of planning and outreach despite the existence of

8   several prior state- and federally-funded initiatives that already identified the same needs."

9   Esquivido Decl., Ex. E, p.300. Defendants' statements are untethered from fact and wholly

10  unsupported. SBCTC has demonstrated that Tribal Stewards is an outcome-based project with

11  clear objectives and deliverables. The Tribal Stewards proposal provides concrete performance

12  indicators, timelines, and mechanisms for measuring success, including but not limited to the

13  anticipated number of students served, total graduates, faculty hired and trained, programs

14  redesigned, employers committed, and jobs available to graduates. *Id.* ¶¶18-24. Tribal Stewards

15  would have delivered on its promise of "robust assessment" by, among other things, tracking

16  student retention, program completion, and employment outcomes; hiring an external evaluator

17  in addition to the required NOAA-led internal evaluation; and completing the routine 6-month

18  reporting requirements of the award. Esquivido Decl. ¶¶33-37; *id.*, Ex. C, p.95-106. Tribal

19  Stewards would have disseminated findings in a multitude of ways had its award not been

20  terminated. *Id.*, Ex. C, p.105-107, 187. Defendants' conclusions run so counter to the evidence

21  before them it is entirely implausible that their conclusions could be ascribed to a difference in

22  view and therefore are arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43.

23      Defendants' assertion that EFCR "proposes yet another layer of planning and outreach

24  despite the existence of several prior state- and federally-funded initiatives that already

25  identified the same needs" is patently inaccurate and Defendants have not—and cannot—

26  support it. No state or federally funded initiatives to date have addressed the specific scope of

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

16

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1   work proposed by Ecology, which as NOAA previously acknowledged, is both novel and

2   necessary to ensure Ecology can effectively and equitably serve Washington's coastal

3   communities and tribes. McGerr Decl.¶¶21-22; Gostic Decl.¶25. Moreover, the purpose of

4   NOAA's Projects of Special Merit Competition was to advance planning processes that further

5   CZM Programs' existing enhancement strategies that align with national enhancement area

6   priorities, such as coastal hazards. Gostic Decl.¶7; *id.*, Ex. A, p.14-15. Construction projects

7   are ineligible for funding and NOAA explicitly encouraged outreach in the NOFO. McGerr

8   Decl.¶21-22; *id.*, Ex. A, p.15, 18, 37-38. Defendants' assertion about EFCR runs so counter to

9   the evidence before them it is entirely implausible their assertion could be ascribed to a

10  difference in view and therefore is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n.*,

11  463 U.S. at 43.

12      *Fourth*, Defendants' terminations rest on an unexplained and unreasonable change in

13  Defendants' interpretation of § 200.340. Even if it were permissible for Defendants to

14  "chang[e] its course" and to base the terminations on **new** priorities—which, under the

15  Guidance they are not authorized to do—Defendants are "obligated to supply a reasoned

16  analysis for the change." *Sierra Club v. Salazar*, 177 F. Supp. 3d 512, 532-33 (D.D.C. 2016);

17  *see also Verizon v. FCC*, 740 F.3d 623, 636 (D.C. Cir. 2014) ("[R]easoned decision-making

18  ordinarily demands that an agency acknowledge and explain the reasons for a changed

19  interpretation."). What the agency must not do is depart from its prior position sub silentio.

20  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

21      Here, Defendants failed to articulate "good reasons" for their change in interpretation

22  of § 200.340 and for their new position, *Encino Motorcars*, *LLC v. Navarro*, 579 U.S. 211, 221

23  (quotation marks omitted), rendering termination decisions relying on the new interpretation

24  arbitrary and capricious. The only reason Defendants provided for their change in position was

25  the change in position itself, which is an inadequate justification under the APA.

26      *Fifth*, Defendants were required and entirely failed to consider Washington's serious

1    reliance interests. "When an agency changes course,…it must be cognizant that longstanding

2    policies may have engendered serious reliance interests that must be taken into account." *DHS*

3    *v. Regents of the Univ. of California*, 591 U.S. 1, 30 (2020) (quotation marks and citation

4    omitted). The agency also must consider alternatives to its change in position that are "within

5    the ambit of existing [policy]." *Id.* Where there has been good-faith reliance on Defendants'

6    prior position, the government must account for that reliance when explaining a shift in policy.

7    *Encino Motorcars*, 579 U.S. at 224. Defendants in no way did so here. Instead, Defendants

8    failed to consider any of Washington's reliance interests, much less weigh them against

9    competing policy concerns (if any). *See Regents*, 591 U.S. at 30. Defendants also failed to

10   consider reasonable alternatives to their change in position "within the ambit of existing

11   [policy], such as applying their new priorities prospectively as other administrations have done

12   for decades.

13        Washington reasonably relied on its understanding that so long as it complied with the

14   requirements identified in its awards, it would receive the full amount of awarded funds.

15   Washington started planned and started programs, negotiated and/or entered contracts,

16   developed partnerships, entered agreements, hired employees, recruited students, etc., *see, e.g.,*

17   McGerr Decl.¶25; Gostic Decl.¶20; Esquivido Decl.¶37, only for Defendants to abruptly and

18   unlawfully terminate its funding. Washington's reasonable reliance was supported by, among

19   other things, the plain text of the Guidance; Defendants' express statements that each award

20   "constitutes an obligation of Federal funding," McGerr Decl., Ex. C, p.73; Esquivido Decl.,

21   Exhibit A, p.21; and the Department of Commerce Cooperative Agreements and Grants

22   Manual, which provides: "A grant gives the recipient legal authority to expend the funds

23   awarded," Esquivido Decl., Ex. G, p.438. Defendants also failed to account for the reliance

24   interests of Tribal Stewards partners, including Washington colleges and tribes that were

25   counting on Tribal Stewards funding to hire staff and provide services, Esquivido Decl.¶59

26   (table); employers that were counting on an influx of climate resilience-adept staff, *see*

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP                                    18                   ATTORNEY GENERAL OF WASHINGTON
                                                                            Environmental Protection Division
                                                                            800 Fifth Avenue STE 2000
                                                                            Seattle, WA 98104
                                                                            (206) 464-7744

1   *id.*¶¶50-51; and current and prospective students that need access to these services to succeed,

2   *see id.*¶¶40, 47-48, 57.

3          Washington accepted its awards with the understanding that Defendants could not

4   terminate them on a whim based on purported changes in agency priorities that post-date the

5   award—let alone with no advance notice of the new priorities, no indication that Defendants

6   considered Washington's serious reliance interests, anno opportunity to object or appeal.

7   Defendants' termination decisions here are the very epitome of arbitrary and capricious

8   decision-making and must be set aside.

9   **D.    Defendants' Actions Have Caused, and Will Continue to Cause, Irreparable Harm
           to Washington**

10

11         Absent injunctive relief, Defendants' terminations will irreparably harm Washington.

12   Irreparable harm is "harm for which there is no adequate legal remedy, such as an award for

13   damages." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (quoting

14   *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). Economic harm is

15   irreparable "where parties cannot typically recover monetary damages flowing from their

16   injury—as is often the case in APA cases." *Id.* (citing *California v. Azar*, 911 F.3d 558, 581

17   (9th Cir. 2018)).

18         *First*, Defendants' terminations will irreparably harm Washington by terminating

19   programs created to further the state's sovereign interests in protecting its residents' welfare,

20   state and local economies, and the environment, including through implementation of its

21   Climate Resilience Strategy. *See Kansas v. United States*, 249 F.3d 1213, 1227-28 (10th Cir.

22   2001) (threats to state's public policy and sovereign interests constitute irreparable harm); *New

23   York v. Trump*, 490 F. Supp. 3d 225, 243-44 (D.D.C. 2020) (impeding states' public health

24   programs caused irreparable harm to their respective jurisdictions as a whole). Washington's

25   Climate Resilience Strategy is guided by a set of statutorily-defined principles that require

26   prioritizing actions that provide more equitable outcomes for overburdened communities and

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP                              19                    ATTORNEY GENERAL OF WASHINGTON
                                                                        Environmental Protection Division
                                                                        800 Fifth Avenue STE 2000
                                                                        Seattle, WA 98104
                                                                        (206) 464-7744

vulnerable populations. Hennessey Decl., Ex. 2, p.94. EFCR and Tribal Stewards both aimed to build climate resilience in a way that reduced health, education, and employment disparities rooted in systemic inequities. Terminating EFCR undermines the state's efforts by hindering its ability to carry out Coastal Zone Management Program activities, leaving overburdened communities vulnerable to increasing, unmitigated adverse effects from flooding, erosion, sea level rise, and other coastal hazards, and failing to alleviate the disparities EFCR intended to address. Hennessey Decl.¶15, McGerr Decl.¶26; Gostic Decl.¶¶28-31. Terminating Tribal Stewards undermines Washington's Climate Resilience Strategy by, among other things, impeding the state's efforts to build a climate resilience-adept workforce. Hennessey Decl.¶16; Esquivido Decl.¶¶15, 49-51.

*Second*, Defendants' terminations irreparably harm Washington by threatening the very existence of EFCR and Tribal Stewards—absent its awards, these programs cannot continue— and harming Ecology's and SBCTC's missions in the process. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (finding irreparable harm where plaintiffs showed "ongoing harms to their organizational missions"). Terminating EFCR frustrates Ecology's mission to protect, preserve, and enhance Washington's environment for the benefit of current and future generations by ending efforts to improve meaningful community and tribal engagement and provide tangible benefits to Washington residents. McGerr Decl.¶26(f). Terminating Tribal Stewards undermines SBCTC's mission to "challenge, empower and embolden [itself] and [its] colleges to deliver equitable higher education through antiracist policies that ensure economic vitality across Washington" by eliminating an opportunity for Washington to address disparities resulting from systemic racism and cultural incongruence within mainstream academic settings, which negatively affect educational achievement, employment opportunities, and local economies, Esquivido Decl. ¶¶4, 45. Defendants' terminations also imminently hinder SBCTC's workforce development initiatives impeding economic development in some of the state's most rural and economically depressed regions

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

20

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1   and directly harming the committed state and tribal employers that were counting on an influx

2   of climate resilience-adept staff. *Id.*¶¶49-51.

3       *Third*, Defendants' terminations are also "interfer[ing] with the [Washington's] ability

4   to budget, plan for the future, and properly serve [its] residents." *County of Santa Clara v.*

5   *Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017). "It is so obvious that it almost need not be

6   stated that when money is obligated and therefore expected…and is not paid as promised, harm

7   follows…services stop, and budgets are upended." *New York v. Trump*, 769 F.Supp.3d 119,

8   142 (D.R.I. 2025); *see, e.g.*, *Michigan v. DeVos*, 481 F. Supp. 3d 984, 995-96 (N.D. Cal. 2020)

9   (irreparable harm from "financial and operational harms" to state agencies from federal

10  actions). Ecology and SBCTC rightly "based their programs, budgeting, staffing, and

11  partnerships with communities on th[e] understanding" they would receive the full amount of

12  awarded funds. *Planned Parenthood of Greater Wash. & N. Idaho v. U.S. Dep't of Health &*

13  *Hum. Servs.,* 328 F. Supp. 3d 1133, 1150 (E.D. Wash. 2018). As a result of Defendants'

14  termination, Ecology was forced to halt EFCR work and in the absence of preliminary relief,

15  cannot make meaningful updates to state plans or establish a framework to equitably prioritize

16  technical assistance in the communities facing the most severe coastal hazards, imminently

17  impeding communities' access to important state resources harming Washington's

18  environment and residents. Gostic Decl.¶¶28-31, McGerr Decl.¶26(a)-(c).

19      SBCTC budgeted to fund 25 specialized positions to support Tribal Stewards students.

20  Esquivido Decl.¶23. Without these funded positions, the success of currently enrolled students

21  will be jeopardized, and hundreds of students will not access or complete these degree

22  programs. *Id.*¶¶56-57. But SBCTC and colleges have been forced to terminate employees and

23  cancel ongoing and planned hiring efforts. *Id.*¶59 (table). Notably, staff cuts SBCTC and

24  colleges are making and, in the absence of preliminary relief will have to continue making,

25  include highly-trained and specialized employees, many of whom have forged invaluable

26  relationships with community and tribal partners, and who will be difficult to hire back or

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

21

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1   replace. *Id.*¶58. The loss of these specially skilled staff constitutes irreparable harm. *See Los*

2   *Altos Boots v. Bonta*, 562 F. Supp. 3d 1036, 1047 (E.D.Cal. 2021). The abrupt termination of

3   resources that was flowing from SBCTC to colleges and tribes will similarly harm college

4   operations and negatively affect their ability to serve students effectively. In the absence of

5   preliminary relief, two colleges that moved degree programs to on-reservation campuses will

6   not be able to operate those programs and tribes have cancelled scholarship programs that

7   would have supported at least 28 students. Esquivido Decl.¶59 (table).

8        *Fourth*, "irreparable harm exists where, in reliance on the federal government's

9   approval of a program, a state makes substantial resource investments in planning for the

10  implementation of that program, only to have that approval rescinded and the expectation

11  interest that the state would be able to capitalize on those investments stymied." *Duffy*, 2025

12  WL 1513369, at *28 (quotation marks omitted). In reliance on NOAA's approval of EFCR and

13  Tribal Stewards and its reasonable expectation it would receive the entire amount of its awards,

14  Washington dedicated significant state resources, including state funds and staff time to

15  developing EFCR and Tribal Stewards and carrying out award activities before Defendants'

16  unlawful terminations. *See e.g.,* McGerr Decl.¶¶25-26(d), Gostic Decl.¶¶20, 32; Esquivido,

17  Decl.¶¶37. Washington cannot recover these investments of time and resources, the purpose of

18  which will not be realized in the absence of its awards. Even if the Court's ultimate merits

19  determination is in favor of Washington, the state "would not be made whole…as [it] cannot

20  be adequately compensated for the delays in implementing" its investments. *Duffy*, 2025 WL

21  1513369, at *45. If Washington's funds are restored, increased administrative costs from

22  prolonged disruption will necessarily decrease the amount of funds available for salaries,

23  scholarships, and program administration. Gostic Decl.¶32; Esquivido Decl.¶58. Moreover,

24  without immediate intervention, the funding to which Washington is entitled may be rendered

25  unrecoverable. "[I]n cases involving government expenditures, 'once the relevant funds have

26  been obligated, a court cannot reach them in order to award relief.'" *Climate United Fund*,

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

22

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

2025 WL 1131412, at *17 (quoting *City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1426–27 (D.C. Cir. 1994)). The appropriated funds could also expire before the merits of this lawsuit are resolved. *See e.g.*, Inflation Reduction Act of 2022, Pub. L. No. 117-169, 136 Stat. 2028 (2022) (stating that the funds appropriated to NOAA remain available until September 30, 2026). Washington's risk of losing its awards permanently if the funds are otherwise obligated or expire makes the need for equitable relief urgent.

*Finally*, Defendants' terminations have caused, and in the absence of preliminary relief will continue to cause reputational damage to Washington. Cancelling its contracting process, Gostic Decl.¶32, damages Ecology goodwill with the contractor making it more difficult for Ecology to attract consultants in the future. *See East Bay Sanctuary Covenant*, 993 F.3d at 677 (intangible injuries to reputation and goodwill support irreparable harm) (citing *Brewer*, 757 F.3d at 1068); *adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756-7 (2018)). Damage to SBCTC's reputation, see Esquivido Decl. ¶43, is a direct result of the termination of funding it was using to partner with and provide resources to sub-awardee colleges and tribes. Reputational harm resulting from the challenged action is irreparable considering such harm is impossible to quantify. *S. Educ. Found. v. Dep't of Educ., -- F. Supp. 3d--, 2025 WL 1453047, at *8-9 (D.D.C. May 21, 2025)* at *14-15 (describing as irreparable harm the damage to reputational injury due to loss of funding); *Woonasquatucket River Watershed Council*, 778 F. Supp. 3d 440, 474-75 (D.R.I. 2025) (same); *see also HIAS, Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021) (describing as irreparable harm the erosion of community connections even if organizations survive).

None of these harms are compensable with money damages and all of them make it "unquestionably make it more difficult" for Ecology and SBCTC to "accomplish their primary mission[s]," which itself constitutes irreparable harm. *Woonasquatucket River Watershed Council*, 778 F. Supp. 3d at 474-75 (citing *League of Women Voters of United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016)). It is without question Defendants have caused, and absent

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

23

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1  preliminary relief will continue to cause substantial and irreparable harm. For the avoidance of

2  any doubt, the Ninth Circuit has repeatedly held that "the deprivation of constitutional rights

3  'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th

4  Cir. 2012); *Rodriguez v. Robbins*, 715 F.3d 1127, 1144-45 (9th Cir. 2013). To the extent the

5  Court finds Washington is likely to succeed on the merits of its Spending Clause claim, no

6  more is required to establish an injury warranting immediate relief.

7  **E.     The Balance of Equities Tips Sharply in Washington's Favor and an Injunction is
           in the Public Interest**

8

9        The balance of the equities and public interest factors merge when the government is a

10  party. *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020). When considering whether to

11  grant a preliminary injunction, the Court "must balance the competing claims of injury and

12  must consider the effect on each party of the granting or withholding of the requested

13  relief…[and] pay particular regard for the public consequences." *Winter*, 555 U.S. at 24; *see*

14  *also N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843-44 (9th Cir. 2007). Here, the balance of

15  equities and public interest factors strongly favor entry of a preliminary injunction.

16        Washington's high likelihood of success on the merits is a strong indicator that a

17  preliminary injunction would serve the public interest. *League of Women Voters of U.S. v.*

18  *Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). "It is well established that the Government cannot

19  suffer harm from an injunction that merely ends an unlawful practice." *C.G.B. v. Wolf*, 464 F.

20  Supp. 3d 174, 218 (D.D.C. 2020) (quotation marks and citations omitted). Similarly, "[t]here is

21  generally no public interest in the perpetuation of unlawful agency action." *Open Cmtys. All. v.*

22  *Carson*, 286 F.Supp.3d 148, 179 (D.D.C. 2017) (quotation marks and citation omitted). "To the

23  contrary, there is a substantial public interest in having governmental agencies abide by the

24  federal laws—such as the APA, as well as regulations . . . that govern their existence and

25  operations." *Id.* (quotation marks and citations omitted). This Court recently reiterated that

26  "[t]he rule of law is secured by a strong public interest that the laws 'enacted by their

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

24

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

representatives are not imperiled by executive fiat.'" *Wash. v. Trump*, 768 F.Supp.3d 1239

(W.D. Wash 2025) (quoting *East Bay Sanctuary Covenant*, 932 F.3d at 779).

Moreover, because the Constitution "is the ultimate expression of the public interest,"

"government actions in contravention of the Constitution are always contrary to the public

interest." *Turner v. U.S. Agency for Global Media*, 502 F. Supp. 3d 333, 386 (D.D.C. 2020)

(cleaned up). Washington's likelihood of success on the merits of their constitutional claims

tips the merged third and fourth factors "decisively in [their] favor . . . [b]ecause 'all citizens

have a stake in upholding the Constitution.'" *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir.

2023) (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)); *see also Am.*

*Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en

banc) (a showing of serious questions going to the merits of a constitutional claim "compels a

finding" that the balance of hardships and the public interest favor a preliminary injunction).

The harm to Washington far outweighs Defendants' interest in immediately enforcing

its terminations, and preserving Washington's rights under the Constitution and APA is

essential to the public interest. Defendants will suffer no harm from ceasing to terminate

previously authorized awards for which Congress appropriated funds. The equities and public

interest thus tip drastically in Washington's favor.

## VI.    CONCLUSION

Considering the serious and irreparable harm resulting from Defendants' unlawful

terminations, Washington is entitled to a preliminary injunction to preserve the *status quo ad*

*litem*—not just the situation before Washington filed the instant matter, but "the last

uncontested status which preceded the pending controversy." *Flathead-Lolo-Bitterroot Citizen*

*Task Force*, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation omitted). Accordingly, Washington

respectfully requests that the Court grant its motion.

Dated this 19th day of August, 2025.

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

25

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

I certify that this memorandum contains 8,362 words, in compliance with the Local Civil Rules.

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

*s/ Caitlin M. Soden*
CAITLIN M. SODEN, WSBA # 55457
LEAH A. BROWN, WSBA # 45803
ELLEN RANGE, WSBA #51334
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
(206) 464-7744
caitlin.soden@atg.wa.gov
leah.brown@atg.wa.gov
ellen.range@atg.wa.gov

*Attorneys for the State of Washington*

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
No. 2:25-cv-1507-MJP

26

ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744