FILED
LODGED
RECEIVED
MAIL

SEP 0 2 2025

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>             Plaintiff,<br><br>vs.<br><br>U.S. DEPARTMENT OF COMMERCE;<br>HOWARD LUTNICK in his official<br>capacity as Secretary of Commerce;<br>NATIONAL OCEANIC AND<br>ATMOSPHERIC ADMINISTRATION;<br>and LAURA GRIMM in her official<br>capacity as Acting Administrator of NOAA,<br><br>             Defendants,<br><br>JOHN WORTHINGTON, Intervenor<br>Applicant,<br><br>             Defendant. | No. 2:25-cv-1507<br><br>INTERVENOR-DEFENDANTS' ANSWER<br>TO COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF<br><br><br><br>CLERKS ACTION REQUIRED |

Intervenor-Defendant John Worthington ("Intervenor") hereby answer Plaintiffs' Complaint for Declaratory and Injunctive Relief as follows. To the extent that the Complaint's headings or subheadings contain factual allegations, they are denied. Intervenor reserves the right to amend this pleading as permitted by this Courts rules and orders, including Fed. R. Civ. P. 15.

## INTRODUCTION

1. This paragraph states a legal conclusion to which no response is required. To the extent a further response is required, denied.

2. This paragraph states a legal conclusion to which no response is required. To the extent a further response is required, denied.

3.      Worthington admits 9 million was on the "chopping block." Worthington denies Washington was going to help communities disproportionately exposed to the adverse effects of climate change, because they never considered the impacts of international shipping increases, and have never been able or willing to explain how jet stream emissions fell upon people of color more than white "colonizers." Worthington argues Washington's "environmental justice program" is all "window dressing," "greenwashing" and a complete fraud on the taxpayer.

4.      Worthington admits Executive Order 14151, by President Trump mandated agencies to, "among other things, provide to the Director of the U.S. Office of Management and Budget a list of all "grantees who received Federal funding to provide or advance DEI, DEIA, or 'environmental justice' programs, services, or activities since January 20, 2021," and to terminate all "'equity-related' grants." Exec. Order No. 14,151, 90 Fed. Reg. 8339, 8339-40 (Feb. 26, 2025).

5.      Worthington admits President Trump "formally directed agencies—and the DOGE employees assigned to those agencies—to terminate funding to reduce federal spending or "reallocate spending to . . . advance the policies of my Administration." Exec. Order No. 14,222, 90 Fed. Reg. 11095, 11096 (Feb. 26, 2025)."

6.      Worthington admits that in April 2025, the President Trump "took aim at states' attempts to address climate change within their own borders, describing such efforts as "burdensome and ideologically motivated" and going so far as to direct the Attorney General of the United States to identify "State laws purporting to address 'climate change' or involving 'environmental, social, and governance' initiatives, 'environmental justice,' carbon or 'greenhouse gas' emissions" and take action to "stop the enforcement of [those] laws." Exec. Order No. 14,260, 90 Fed. Reg. 15513, 15514" (April 8, 2025).

**7.**     This paragraph states a legal conclusion to which no response is required. To the extent a further response is required, denied.

8.     This paragraph states a legal conclusion to which no response is required. To the extent a further response is required, denied.

9.     This paragraph states a legal conclusion to which no response is required. To the extent a further response is required, denied.

10.     This paragraph states a legal conclusion to which no response is required. To the extent a further response is required, denied.

11.     This paragraph states a legal conclusion to which no response is required. To the extent a further response is required, denied.

12.     This paragraph states a legal conclusion and contains legal arguments to which no response is required. To the extent a further response is required, denied.

13.     This paragraph states a legal conclusion and contains legal arguments to which no response is required. To the extent a further response is required, denied.

14.     This paragraph states a legal conclusion to which no response is required. To the extent a further response is required, denied.

15.     This paragraph states a legal conclusion to which no response is required. To the extent a further response is required, denied.

16     This paragraph states a legal conclusion and contains legal arguments to which no response is required. To the extent a further response is required, denied.

17.     Denied entirely.

**JURISDICTION**

18.     This paragraph states a legal conclusion and contains legal arguments to which no response is required. To the extent a further response is required, denied. Plaintiffs want to be tribal and global entities and spend American tax dollars. This Court does not have jurisdiction to hear a complaint of a "global" third party "world governing body."

19.     This paragraph states a legal conclusion and contains legal arguments to which no response is required. To the extent a further response is required, denied. Plaintiffs are hiding their "foreign state" status and cannot make third party claims for a "world governing body."

20.     This paragraph states a legal conclusion and contains legal arguments to which no response is required. To the extent a further response is required, denied. Plaintiffs are hiding their "foreign state" status and cannot make third party claims on behalf of the "international sphere of government, they agreed to "build and serve."

**PARTIES**

21.     Washington state, county, city and tribal governments are no longer sovereign because they agreed to build and serve an international government. The Washington State Attorney General serves a "foreign state" and can no longer represent an American State in federal court on behalf of the State on matters of public concern.

22.     Worthington admits   Defendant UNITED STATES DEPARTMENT OF COMMERCE (Commerce) is a cabinet-level agency within the executive branch of the United States government responsible for conserving most marine species and managing ocean resource use, as well as weather and climate forecasting.

23.    Worthington admits Defendant HOWARD LUTNICK is the Secretary of Commerce (Secretary) and is being sued in his official capacity.

24.    Worthington admits Defendant NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION (NOAA) is a federal agency within Commerce responsible for studying and predicting changes in environment, managing coastal and marine resources. Worthington denies NOAA has been providing the public with good environmental information. Any environmental justice determination without considering international shipping emissions or an explanation on how those jet stream emissions effect people of color disproportionately, is as valuable to the public as flubber or magic beans, or in this case as valuable as "window dressing" and "greenwashing."

25.    Worthington admits Defendant LAURA GRIMM is the Acting Administrator of NOAA and is being sued in her official capacity.

### ALLEGATIONS

Heading A. Denied. All flubber or magic beans, or in this case, "window dressing" and "greenwashing."

26.    Denied. All flubber or magic beans, or in this case, "window dressing" and "greenwashing."

27.    Denied. All flubber or magic beans, or in this case, "window dressing" and "greenwashing."

28.    Denied. All flubber or magic beans, or in this case, "window dressing" and "greenwashing."

29.     Department of Ecology used ineffective ICLEI international software and unregistered foreign agents to develop a policy that was pure flubber or magic beans, or in this case, "window dressing" and "greenwashing," illegal, and violated civil rights of white "colonizers."

B.     Denied. Congress was never informed of international and civil rights conflicts.

30.     The Plaintiff's statement that "NOAA is the principal federal agency tasked with understanding and predicting changes in climate, weather, ocean and coasts is admitted. The statement NOAA has been conserving and managing coastal and marine ecosystems and resources is denied. NOAA has been a tool to "build and serve' a world economy, commit civil rights violations and break tribal treaties.

31.     Admitted.
32.     Admitted.
33.     Admitted
34.     Admitted.

35.     Denied. NOAA is a member of Strait Ecosystems Recovery Network (SERN), SERN is a member of the North Olympic Development Council (NODC), NODC conducts "baseline ICLEI activities." NOAA has been part of a "foreign state" since 2009.

36.     Admitted.

C. Heading Admitted

37.     Admitted
38.     Admitted
39.     Admitted
40.     Admitted
41.     Admitted
42.     Admitted
43.     Denied.

44.     The statement "President Biden signed into law the Inflation Reduction Act (IRA) on August 16, 2022. See Pub. L. No. 117-169, 136 Stat. 1818. Is Admitted, The statement  "In enacting the IRA, Congress provided for historic investments in climate and energy to tackle the

1   climate crisis, advance environmental justice, secure America's position as a world leader in

2   domestic clean energy manufacturing and put the United States on a path to net-zero economy by

3   2050." Is denied.

4   45.    Admitted.
    46.    Denied.
5   47.    Denied.
    48.    Admitted
6   49.    Admitted.
    50.    Admitted
7   51.    Admitted
    52.    Admitted
8   53.    Denied
9   54.    Admitted.
    55.    Admitted.
10  56.    Admitted.
    57.    Admitted.
11  58.    Denied. "window dressing" 'greenwashing.'
    59.    Denied. "window dressing" 'greenwashing.'
12  60.    Denied. "window dressing" 'greenwashing.'
    61.    Admitted.
13  62.    Denied. "window dressing" 'greenwashing.'
14  63.    Admitted.
    64.    Admitted.
15  65.    Denied.
    66.    Denied.
16  67.    Admitted
17  68.    Denied
    69.    Denied
18  70.    Denied. "Window dressing" 'greenwashing.'
    71.    Denied. "Window dressing" 'greenwashing.'
19  72.    Admitted
    73.    Admitted.
20  74.    Denied. "Window dressing" 'greenwashing.'
    75.    Admitted.
21  76.    Admitted.
    77.    Admitted.
22  78.    Admitted
23  79.    Denied. "Window dressing" 'greenwashing.'
    80.    Denied. "Window dressing" 'greenwashing.'
24  81.    Denied. "Window dressing" 'greenwashing.'
    82.    Denied. "Window dressing" 'greenwashing.'
25  83.    Admitted.

26

84.     Admitted.

85.     Admitted.

86.     Denied. "Window dressing" 'greenwashing.' "shifting power and resources and decision making to people of color," "repairing a broken relationship," "placing decisions in the hands of people who have been most effected by wrongdoing" " restorative responses to heal past harms and heal broken relationships."

87.     Admitted.

88.     Admitted.

89.     Admitted.

90.     Admitted.

91.     Admitted.

92.     Admitted.

93.     Admitted.

94.     Admitted.

95.     Admitted.

96.     Admitted.

97.     Admitted.

98.     Admitted.

99.     Admitted.

100.     Admitted.

101.     Admitted.

102.     Admitted.

103.     Admitted.

104.     Admitted.

105.     Admitted.

106.     Admitted.

107.     Admitted.

108.     Admitted.

109.     Admitted.

110.     Admitted.

111.     Denied. "Window dressing" 'greenwashing.' "shifting power and resources and decision making to people of color," "repairing a broken relationship," "placing decisions in the hands of people who have been most effected by wrongdoing" " restorative responses to heal past harms and heal broken relationships," does not align with President Trump or the agency priority because it is all fraud, and violates federal grant terms. The President and the agency did not know NOAA, FEMA, AND Washington Department of Ecology were all conducting "baseline ICLEI activities as a member of SERN, in the NODC. The President and the agency did not know about the "foreign state."

112.     Denied. Washington accepted the grant for "shifting power and resources and decision making to people of color," "repairing a broken relationship," "placing decisions in the hands of people who have been most effected by wrongdoing" " restorative responses to heal past harms and heal broken relationships."

113.   Denied. Washington State as part of a "foreign state" in the ICLEI network, intended to harm white" colonizers" and create "global" economic opportunities, and used "window dressing" and "greenwashing" to accomplish goals of a "foreign state," as unregistered foreign agents.

114.   Denied.
115.   Denied.
116.   Denied.
117.   Denied.
118.   Denied.
119.   Denied.
120.   Denied.
121.   Denied.
122.   Denied.
123.   Denied.
124.   Denied.
125.   Denied.
126.   Denied.
127.   Denied.
128.   Denied.
129.   Denied.
130.   Denied.
131.   Denied.
132.   Denied.
133.   Denied.
134.   Denied.
135.   Denied.
136.   Denied.
137.   Admitted
138.   Admitted
139.   Commerce is a federal agency; NOAA is a member of a "foreign state."
140.   Admitted
141.   Admitted
142.   Admitted
143.   Admitted
144.   Admitted
145.   Admitted.
146.   Denied.
147.   Denied.
148.   Denied. White "colonizers" and the American economy are saved.
149.   Admitted.
150.   Admitted.
151.   Denied. NOAA is part of a "foreign state," and there has not been a final agency action on the accusation that the "foreign state" used "window dressing" and "greenwashing" to illegally obtain federal grants and discriminate against white "colonizers."
152.   Admitted.

153.  Admitted.
154.  Admitted.
155.  Intervenor does not have enough information.
156.  Intervenor does not have enough information
157.  Denied. Discrimination is a legal reason to cancel federal grant programs.

158.  Denied. Washington used "window dressing" and "greenwashing' to illegally obtain federal grants with intent to discriminate against white "colonizers" violating DOC 15 CFR 8.5.

159.  Admitted
160.  Admitted.
161.  Denied. Commerce is a federal agency; NOAA is part of a "foreign state."
162.  Denied.
163.  Denied.
164.  Denied.
165.  Denied.
166.  Denied.
167.  Denied.
168.  Denied.
169.  Denied.
170.  Denied.
171.  Denied.
172.  Denied.
173.  Denied.
174.  Admitted.
175.  Admitted.

176.  Commerce is a federal agency, NOAA is part of a "foreign state' and there has been no final agency action on the discrimination conditions in the grant, or under the false claims act and whether the grants were obtained using fraud.

177.  Admitted.
178.  Admitted.
179.  Admitted.
180.  Denied.
181.  Denied.
182.  Denied.
183.  Denied.
184.  Denied.
185.  Denied.

186.  Denied.
187.  Denied.
188.  Admitted.
189.  Intervenor does not have enough information.
190.  Denied. NOAA is part of a "foreign state."
191.  Admitted.
192.  Denied.
193.  Denied.
194.  Admitted
195.  Admitted.
196.  Denied.
197.  Denied.
198.  Admitted.
199.  Denied.
200.  Denied.
201.  Admitted.
202.  Admitted.
203.  Admitted.
204.  Admitted.
205.  Admitted.
206.  Admitted.
207.  Admitted.
208.  Admitted
209.  Denied. 15 CFR 8.5 does authorize Commerce, so does the false clams act.
210.  Admitted.
211.  Denied.
212.  Admitted
213.  Denied
214.  Denied.
215.  Admitted
216.  Admitted
217.  Denied.
218.  Admitted.
219.  Denied.
220.  Denied.
221.  Denied.
222.  Denied.
223.  Admitted.
224.  Denied.
225.  Denied.

**PRAYER FOR RELIEF**

Intervenor denies that Plaintiffs are entitled to any relief.

**GENERAL DENIAL**

Intervenor denies each and every allegation in Plaintiffs Complaint that is not admitted to in this answer.

**INTERVENORS AFFIRMATIVE DEFENSES.**

Intervenor's affirmative defenses to the Complaint are set forth below. By setting forth the following defenses, Intervenor does not assume the burden of proof on the matter and issue other than those in which he has the burden of proof as a matter of law. Intervenor reserves the right to supplement these defenses.

1. Plaintiffs' Complaint includes multiple conclusory allegations without supporting factual allegations showing an entitlement to relief.

2. Plaintiffs fail to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

3. This Court lacks subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

4. Plaintiffs lack standing as a "foreign state" to bring their claims and request relief.

5. Plaintiffs are unable to establish the elements required for injunctive relief.

**COUNTER CLAIMS PURSUANT TO FRCP RULE 13 AND FRCP RULE 24**

Intervenor Worthington seeks counter claims, and class action for those similarly situated. from Washington and the "foreign state.'

**CLASS CERTIFICATION**

Worthington moves the Court pursuant to FRCP 23(a) and (b)(3) for certification of this matter as a class action against Washington and the "foreign state."

**1. Rule 23 Requirements.**

The Court must conduct a "rigorous analysis" to determine whether Worthington's claims are suitable for class certification. Roshandel v. Chertoff, 554 F.Supp.2d 1194, 1203 (W.D. Wash. 2008). In doing so, "the court is not at liberty to consider whether the moving party has stated a cause of action or is likely to prevail on the merits." Grays Harbor Adventist Christian Sch. v. Carrier Corp., 242 F.R.D. 568, 571 (W.D. Wash. 2007) (citing Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.1992)).13 Given that the ruling can be revised at a later date, this Court is afforded "noticeably more deference" in certifying a class than in denying class certification. Just Film, Inc. v. Buono, 847 F. 3d 1108, 1115 (9th Cir. 2017) (quoting Abdullah v US Security Associates, Inc., 731 F. 3d 952, 956 (9th Cir. 2013). "This is because there are proclass action policy arguments that we should not ignore. In particular, class actions are an important way of resolving so-called "negative value claims"; that is, claims that are legitimate, but cost too much to litigate individually." Baker v. Microsoft Corp., 797 F.3d 607, 621 (9th Cir. 2015). This case meets all the requirements of Rule 23(a) and 23(b)(3). Certification is therefore appropriate.

**2. The Proposed Class Definition.**

"A sufficiently definite class exists if its class members are ascertainable and clearly identifiable." Sandoval v. Rizzuti Farms, Ltd., No. CV-07-3076-EFS, 2008 WL 4530525, at *3 (E.D.Wash. Oct. 6, 2008).

Here, the class is identified as white "colonizers."

**3. The Requirements of Rule 23(a) Are Readily Met.**

Rule 23(a) sets forth four prerequisites for certification – numerosity, commonality. The proposed Class definition is "sufficiently definite" as the members of the Class can be identified by examining Washington's records found at https://ofm.wa.gov/washington-data-

1  research/statewide-data/washington-trends/population-changes/population-race.    There    are

2  6,201,549 potential members of the class action. See Sandoval, 2008 WL 4530525, at *3.1

3  **4.  Numerosity is Satisfied**

4      Numerosity exists if the class is so numerous that joinder of all members is "impracticable,"

5  meaning difficult or inconvenient, it need not be impossible. Rule 23(a)(1); Rodriguez v.

6  Carlson, 166 F.R.D. 465, 471 (E.D. Wash. 1996). Courts are entitled to rely on "common sense

7  assumption[s]" and "reasonable estimate[s]" to support a finding of numerosity. See In re

8  Badger Mountain Irrigation Dist. Sec. Litig., 143 F.R.D. 693, 696 (W.D. Wash. 1992). "As a

9  general rule, classes exceeding forty-one (41) individuals satisfy the numerosity requirement."

10  Sandoval, 2008 WL 4530525, at *3.

11      In Washington State, there are 6,201,549 white "colonizers" that are eligible for class action

12  relief, due to Plaintiffs discriminatory use of federal funds for 14 years..

13  **5.  Commonality is Satisfied**

14      Rule 23(a)(2) requires that there be "questions of law or fact common to the class." See Rule

15  23(a)(2); see also *Pierce v. Novastar Mortg., Inc.*, No. C05-5835RJB, 2006 WL 2571984, at *6

16  (W.D. Wash. Sept. 5, 2006). But all questions of fact and law need not be common; "a single

17  common issue is sufficient to meet he commonality requirement." See *Kirkpatrick v. Ironwood

18  Commc'ns, Inc.*, No. C05-1428JLR, 2006 WL 2381797, at *3 (W.D. Wash. Aug. 16, 2006); see

19  also Roshandel, 554 F.Supp.2d at 1203 (citations omitted); *In re Am. Med. Sys., Inc.*, 75 F.3d

20  1069, 1080 (6th Cir.1996). The commonality test "is qualitative rather than quantitative...." In re

21  Am. Med. Sys., 75 F.3d at 1080 (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on

22  Class Actions, § 3.10, at 3–50 (3d ed.1992)); see also In re Orthopedic Bone Screw Prods. Liab.

23  Litig., 176 F.R.D. 158, 174 (E.D.Pa.1997) ("[A] common question need only exist, not

24  predominate, for the [commonality] requirement to be satisfied.").

The common question is whether white "colonizers' should pay "reparations" for "colonization, through an interception of federal grants, intended for the general population, and not through the BIA or minority government options. That common question exists for all 6,201,549 white "colonizers" in Washington.

**6. Typicality is Satisfied**

Rule 23(a)(3) requires that a Plaintiff's claims be typical of the claims or defenses of the Class. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Further stated: "To satisfy typicality, Plaintiffs must show 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" Rodriguez v. Hayes, 591 F.3d 1105, 1124 (9th Cir. 2009)). "Typicality focuses on the class representative's claim — but not the specific facts from which the claim arose … The requirement is permissive … [claims] need not be substantially identical." Just Film, Inc. v. Buono, 847 F. 3d 1108, 1116 (9th Cir. 2017). As put in Wolin v. Jaguar Land Rover North America, LLC, 617 F. 3d 1168, 1175 (9th Cir. 2010), "different factual circumstances" do not defeat typicality, provided they "possess the same interest and suffered the same injury as the class members." (quoting E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)).

The claims for all 6,201,549 white "colonizers," in Washington are all typical and press the same interests.

**7. Adequacy is Satisfied.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy involves a two-prong test: (1) the named plaintiff must appear

1    to be able to prosecute vigorously the action through qualified counsel; and (2) there must be no

2    conflicting interests between the class representative and the other members of the class. *Hanlon*

3    *v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (citing *Lerwill v. Inflight Motion*

4    *Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978)); *Weinberger v. Jackson*, 102 F.R.D. 839, 845

5    (N.D. Cal. 1984). It is presumed that the interests of the representative plaintiffs do not conflict

6    with those of the Class Members, and that counsel is adequate to represent those interests. H.

7    Newberg & A. Conte, Newberg on Class Actions, §3.05 at 3-25 (3d ed. 1992).

8        Worthington has all the evidence and can fairly represent and protect the interests of the

9    class in Washington.

10   **8. Certification is Appropriate.**

11       Pursuant to Rule 23(b)(3) Under Rule 23(b)(3), the Court may certify a Class if it finds that:

12   (1) common questions of law or fact predominate over any questions affecting only individual

13   members; and (2) a class action is superior to other available methods for the fair and efficient

14   adjudication of the controversy. See Fed. R. Civ. P. 23(b)(3); Grays Harbor, 242 F.R.D. at 572-

15   73. Here, Worthington seeks certification of a Washington-only FRCP 23(b)(3) damages to the

16   white "colonizers' Class in Washington.

17       **1.  Common Questions of Law and Fact Predominate.**

18       "The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of

19   whether common questions prevail over individualized ones." *Torres v. Mercer Canyons Inc.*,

20   835 F.3d 1125, 1134 (9th Cir. 2016) The existence of common questions is judged by whether

21   "the same evidence will suffice for each member to make a prima facie showing [or] the issue is

22   susceptible to generalized, class-wide proof." *Torres,* 835 F.3d at 1134 (quoting Tyson Foods v.

23   Bouaphakeo, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016)). "There is no single qualitative or

quantitative test for predominance; rather, the Court pursues a pragmatic inquiry as to whether common questions represent a significant aspect of the case." *Kelley v. Microsoft Corp., No.* C07-0475MJP, 2009 WL 973368, at *4 (W.D. Wash. April 10, 2009) rev'd on other grounds 395 Fed.Appx. 431 (9th Cir. 2010) (citations and quotations omitted). As the Torres Court observed, Predominance is not, however, a matter of nose-counting. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014)]. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class. Torres, 835 F.3d at 1134. "Individual damage questions do not preclude a Rule 23(b)(3) class action when the issue of liability is common to the class." In re NCAA I-A Walk-On Football Players Litig., No. C04-1254C, 2006 WL 1207915, at *9 (W.D. Wash. May 3, 2006) (citations and internal quotations omitted); Leyva v. Medline Indus. Inc., 716 F.3d 510, 513 (9th Cir. 2013) ("In almost every class action, factual determinations of damages to individual class members must be made. Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device."); Yokoyama v. Midland Nat. Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010) ("The potential existence of individualized damage assessments ... does not detract from the action's suitability for class certification.").

Common issues as to the amount of discrimination against white "colonizers" with respect to liability, the overriding common question is, whether Plaintiffs were discriminated against for 14 years so Plaintiffs could use federal grants and Congressional appropriations intended for everybody to use, to pay "reparations" for "colonization, through an interception of federal

grants, intended for the general population, and not through the BIA or minority government options. That common question exists for all 6,201,549 white "colonizers" in Washington.

Statistical proof of damages and liability is well accepted in Washington and Federal law. Moore v. Health Care Auth., 181 Wn.2d 299, 332 P.3d 461, 466 (2014) (""it is not unusual, and probably more likely in many types of cases, that aggregate evidence of the defendant's liability is more accurate and precise than would be so with individual proofs of loss"),18 *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016); (see also *Chavez v. Our Lady of Lourdes Hospital at Pasco*, 190 Wn.2d 507, 519, 415 P.3d 224 (2018) ("it is not necessary to prove each plaintiff's damages on an individual basis; it is possible to assess damages on a class-wide basis using representative testimony") (italics in original). Certification is therefore appropriate.

**2. Class Treatment is Superior and Manageable.**

Rule 23(b)(3) sets forth factors for determining whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." See Rule 23(b)(3); Grays Harbor, 242 F.R.D. at 573.19 The focus is on "the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253 F.3d at 1190 (citations omitted) when also "involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Here, the superiority considerations weigh heavily in favor of class certification. Class Members would presumably have little interest resources or evidence to pursue individual actions. Worthington is not aware of pending individual actions by Class Members against Plaintiffs Washington and the "foreign state." Worthington argues it would be neither economically feasible nor efficient for Class Members to pursue their claims on an individual basis. The monetary recovery for the majority of Class

Members would be relatively small. This, coupled with the cost of litigation, makes vindication of Class Members' rights extremely difficult, if not impossible.

Finally, this case is manageable as a class action. Liability will be established through common evidence that Plaintiffs Washington and the "foreign state" used federal grants and Congressional appropriations intended for everybody to be used to pay "reparations" for "colonization, through an interception of federal grants, intended for the general population, and not through the BIA or minority government options. That common question exists for all 6,201,549 white "colonizers" in Washington.

### CONCLUSION

Based on the above, Mr. Worthington respectfully requests that the Court GRANT his motion to CERTIFY this matter as a class action. He asks that he be appointed to serve as class representative.

### COUNT 1

**Violations of the Equal Protection Clause of the Fourteenth Amendment, Fifth Amendment, and Title VI of the Civil Rights Act of 1964.**

1. Since 2009, while working as unregistered foreign agents, Plaintiffs used "window dressing" and 'greenwashing,' to get federal funds under the guise of climate change to violate Worthington's and the certified class's civil rights by: "shifting power and resources and decision making to people of color," "repairing a broken relationship," "placing decisions in the hands of people who have been most effected by wrongdoing," and " restorative responses to heal past harms and heal broken relationships."

2. Plaintiffs' actions as described in the briefing in this case and herein and the improper use of federal funds discriminated against Worthington's and the certified class's civil rights under the Fifth and Fourteenth Amendment and Title VI of the Civil Rights Act of 1964. Federally

funded programs must avoid explicit race-based preferences or quotas to comply with Title VI and constitutional standards. See *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College* (600 U.S. 181, 2023).

### COUNT 2

### Qui Tam Relief under the False Clams Act.

1. Worthington is authorized under the False Claims Act to act on behalf of the government to combat fraud, with the authority to seek financial recovery, penalties, and court costs.

2. Plaintiffs working as unregistered foreign agents, used "window dressing" and 'greenwashing,' to get federal funds under the guise of climate change to violate Worthington's civil rights by: "shifting power and resources and decision making to people of color," "repairing a broken relationship," "placing decisions in the hands of people who have been most effected by wrongdoing," and " restorative responses to heal past harms and heal broken relationships."

3. Plaintiffs undermined the American economy to prevent "protectionism" and "build capacity" for the world economy using federal grant monies for 14 years.

4. Worthington is entitled Qui Tam relief under the False Claims Act.

### INTERVENOR-DEFENDANTS' PRAYER FOR RELIEF

Intervenor respectfully asks the Court for the following relief:

1. Convene a court of three judges pursuant to 28 U.S.C. § 2284(a);

2. Dismiss the Plaintiffs' Complaint in its entirety and with prejudice;

3. Award Intervenor' reasonable attorneys' fees and costs incurred in this action in accordance with Qui Tam false claims act relief.

4. Grant such other and further relief as the Court deems just and proper, such as counter claims

1  for discrimination and loss of economic opportunities.

2

3  Respectfully submitted this 28th day of August.2025.

4

5  By: _____

6  JOHN WORTHINGTON

7  303 S. 5TH AVE G-53
   SEQUIM WA.98382

8

9

10

11

12

13

14

15

16

17

18

19  .

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

The undersigned certifies, under penalty of perjury under the laws of the State of Washington, that on the 28TH day of August, 2025, I [ X ] e-mailed a true and correct copy of this document to counsel of record. DATED

Respectfully submitted this 28th day of August 2025.

By: _____

JOHN WORTHINGTON
303 S. 5TH AVE G-53
SEQUIM WA.98382

FROM

J. WORTHINGTON
303 S. 5TH AVE G-53
SEQUIM WA. 98382

Retail

U.S. POSTAGE PAID
FCM LG ENV
SEQUIM, WA 98382
AUG 28, 2025

98101

$3.00

RDC 99

S2324N500266-11

TO: CLERKS OFFICE
U.S. DISTRICT COURT
WESTERN DIST. OF WA.
SEATTLE
700 STEWART ST A
SEATTLE WA. 98101

Utility Mailer
10 1/2" x 16"

ReadyPost