District Judge Marsha J. Pechman

1

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

STATE OF WASHINGTON,                              CASE NO.  2:25-cv-1507-MJP

11
                              Plaintiff,          **DEFENDANTS' OPPOSITION TO**
12                                                **PLAINTIFF'S MOTION FOR**
                                                  **PRELIMINARY INJUNCTION**
13            v.

14   UNITED STATES DEPARTMENT OF
     COMMERCE, et al.,
15
                              Defendants.
16

17

18

19

20

21

22

23

24

25

26

27

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ........................................................................................................................ 1

I.  Plaintiff's Grants ........................................................................................................... 1

    A.  Washington Department of Ecology Award ................................................... 2

    B.  Tribal Stewards Award ................................................................................... 3

II.  Regulatory Background ................................................................................................. 3

III.  This Lawsuit ................................................................................................................. 4

LEGAL STANDARD ................................................................................................................. 4

ARGUMENT ............................................................................................................................. 5

I.  Plaintiff Fails to Establish This Court's Jurisdiction. ................................................... 5

II.  Plaintiff Fails To Establish Irreparable Harm. ............................................................. 8

III.  Plaintiff's APA Claims Are Not Likely To Succeed. .................................................. 10

    A.  The Grant Terminations Are Committed To Agency Discretion By Law ................. 10

    B.  The Grant Terminations Are Consistent With Applicable Regulations. .................... 12

    C.  The Grant Terminations Are Not Arbitrary and Capricious. ...................................... 17

IV.  Plaintiff's Spending Clause Claim Is Not Likely To Succeed. .................................... 18

V.  The Balance Of The Equities Weigh In The Federal Government's Favor. .......................... 20

VI.  Any Injunctive Relief Should Be Stayed Pending Appeal and Be Accompanied By A Bond. ........................................................................................................................................... 21

CONCLUSION ....................................................................................................................... 21

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - i
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

# TABLE OF AUTHORITIES

**Cases**

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
  750 F.2d 1470 (9th Cir. 1985) ......................................................................... 9

*Amica Ctr. for Immigrant Rights v. U.S. Dep't of Justice*,
  2025 WL 1852762 (D.D.C. July 6, 2025) ........................................................ 11

*Appalachian Voices v. EPA*,
  2025 WL 2494905 (D.D.C. Aug. 29, 2025) ...................................................... 6

*Atlantic Richfield Co. v. Christian*,
  590 U.S. 1 (2020) ........................................................................................... 15

*Battele Energy All., LLC v. Southfork Sec., Inc.*,
  980 F. Supp. 2d 1211 (D. Ida. 2013) ................................................................ 8

*Bennett v. Kentucky Dep't of Educ.*,
  470 U.S. 656 (1985) ....................................................................................... 19

*Biden v. Missouri*,
  595 U.S. 87 (2022) ......................................................................................... 19

*Boaz Hous. Auth. v. United States*,
  994 F.3d 1359 (Fed. Cir. 2021) ................................................................... 5, 6

*California v. Azar*,
  950 F.3d 1067 (9th Cir. 2020) ........................................................................ 18

*Caribbean Marine Servs. Co. v. Baldrige*,
  844 F.2d 668 (9th Cir. 1988) ........................................................................... 8

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ....................................................................................... 17

*Climate United Fund v. Citibank, N.A.*,
  --- F.4th ----, 2025 WL 2502881 (D.C. Cir. Sept. 2, 2025) ................................. 6, 7, 12

*Cummings v. Premier Rehab Keller, PLLC*,
  596 U.S. 212 (2022) ....................................................................................... 19

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019) ....................................................................................... 16

*Dep't of Educ. v. California*
  145 S. Ct. 966 ......................................................................................... *passim*

*Faculty Senate of Fla. Int'l Univ. v. Winn*,
  477 F. Supp. 2d 1198 (S.D. Fla. 2007) ............................................................. 9

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - ii
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ........................................................................................ 17

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ................................................................................... 17, 18

*Goldie's Bookstore v. Superior Court*,
    739 F.2d 466 (9th Cir. 1984) ............................................................................ 8

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) .......................................................................................... 8

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ........................................................................................ 10

*Heckler v. Turner*,
    468 U.S. 1305 (1984) ...................................................................................... 20

*Holley v. United States*,
    124 F.3d 1462 (Fed. Cir. 1997) ........................................................................ 7

*Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985) ............................................................................ 6

*Kentucky v. Yellen*,
    54 F.4th 325 (6th Cir. 2022) ........................................................................... 19

*Kidwell v. Dep't of Army*,
    56 F.3d 279 (D.C. Cir. 1995) ............................................................................ 7

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ................................................................................... 10, 11

*Marx v. General Revenue Corp.*,
    568 U.S. 371 (2013) ........................................................................................ 15

*Maryland v. King*,
    567 U.S. 1301 (2012) ...................................................................................... 21

*Medina v. Planned Parenthood S. Atl.*,
    145 S. Ct. 2219 (2025) ...................................................................................... 6

*Milk Train, Inc. v. Veneman*,
    310 F.3d 747 (D.C. Cir. 2002) ........................................................................ 11

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) (en banc) ............................................................ 7

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Automobile Ins. Co.*,
    463 U.S. 29 (2009) .......................................................................................... 16

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - iii
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L St. NW
Washington, DC 20005
(202)-616-8098

*Munaf v. Geren*,
    553 U.S. 674 (2008) ............................................................................. 4

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
    2025 WL 2415669 (U.S. Aug. 21, 2025) ........................................... 6, 7, 20

*New York v. DOJ*,
    951 F.3d 84 (2d Cir. 2020) .................................................................. 19

*Newdow v. Bush*,
    355 F. Supp. 2d 265 (D.D.C. 2005) ..................................................... 8

*Nken v. Holder*,
    556 U.S. 418 (2009) .......................................................................... 5, 20

*NLRB v. Cal. Pac. Med. Ctr.*,
    991 F.2d 536 (9th Cir. 1993) ............................................................... 8

*Pennhurst State School & Hospital v. Halderman*,
    451 U.S. 1 (1981) ............................................................................ 19, 20

*Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*,
    313 F. Supp. 3d 62 (D.D.C. 2018) ..................................................... 11

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ............................................................... 9

*Rudisill v. McDonough*,
    601 U.S. 294 (2024) ......................................................................... 14

*Ryder v. Union Pac. R.R. Co.*,
    945 F.3d 194 (5th Cir. 2019) ............................................................ 15

*Sampson v. Murray*,
    415 U.S. 61 (1974) ............................................................................ 9

*Savantage Fin. Servs., Inc. v. United States*,
    595 F.3d 1282 (Fed. Cir. 2010) ......................................................... 17

*Sharp v. Weinberger*,
    798 F.2d 1521 (D.C. Cir. 1986) .......................................................... 8

*South Dakota v. Dole*,
    483 U.S. 203 (1987) .......................................................................... 19

*Southwest Airlines Co. v. Saxon*,
    596 U.S. 450 (2022) ......................................................................... 14

*Stanley v. Univ. of S. Cal.*,
    13 F.3d 1313 (9th Cir. 1994) ............................................................... 9

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - iv
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

*Steel Co v. Citizens for a Better Env't.*,
   523 U.S. 83 (1998) ................................................................................ 5

*Sustainability Institute v. Trump*,
   2025 WL 1587100 (4th Cir. June 5, 2025) ................................................ 6

*Tennessee v. Becerra*,
   131 F.4th 350 (6th Cir. 2025) ........................................................ 18, 19

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
   ---F. Supp. 3d---, 2025 WL 763738 (D.D.C. Mar. 11, 2025) ........................ 8

*United States v. Wilson*,
   503 U.S. 329 (1992) .......................................................................... 14

*Valeo Intellectual Prop., Inc. v. Data Depth Corp.*,
   368 F. Supp. 2d 1121 (W.D. Wash. 2005) ............................................... 8

*Washington v. FDA*,
   108 F.4th 1163 (9th Cir. 2024) ............................................................ 8

*Westchester v. U.S. Dep't of Hous. & Urb. Dev.*,
   778 F.3d 412 (2d Cir. 2015) ............................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ..................................................................... 4, 5, 8

**U.S. Constitution**

U.S. Const. art. I § 8, cl.1 ......................................................................... 18

**Statutes**

5 U.S.C. § 701 ....................................................................................... 10

5 U.S.C. § 702 .................................................................................. 5, 10

5 U.S.C. § 706 ....................................................................................... 10

16 U.S.C. § 1456b .............................................................................. 2, 11

28 U.S.C. § 1491 ..................................................................................... 5

31 U.S.C. § 1552 ..................................................................................... 9

31 U.S.C. § 1553 ..................................................................................... 9

Pub. L. No. 117-169, 136 Stat. 1818 (2022) ....................................... 3, 9, 10, 11

One Big Beautiful Bill Act,
   Pub. L. No. 119-21, 139 Stat. 72 (2025) ............................................ 4, 5, 8

**Rules**

Fed. R. Civ. P. 65 ................................................................................... 21

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

**Regulations**

2 C.F.R. Part 200 ............................................................................................ 2, 12, 16

2 C.F.R. § 200.211 ...................................................................................................... 13

2 C.F.R. § 200.340 ............................................................................................... *passim*

2 C.F.R. § 200.341 ...................................................................................................... 17

2 C.F.R. § 200.342 ...................................................................................................... 16

2 C.F.R. § 340 ............................................................................................................... 4

2 C.F.R. § 1327.1 .......................................................................................................... 2

2 C.F.R. § 1327.101 .................................................................................................... 12

85 Fed. Reg. 49,506 (Aug. 13, 2020) ........................................................................... 4

89 Fed. Reg. 30,046 (April 22, 2024) ........................................................................... 4

**Other Authorities**

The White House, *The Mission and Structure of the Office of Management and Budget*,
https://obamawhitehouse.archives.gov/omb/organization_mission/ ........................... 16

U.S. National Science Foundation, Research Terms and Conditions,
https://perma.cc/3TBS-C9AC ............................................................................ 12, 13

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - vi
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

# INTRODUCTION

Plaintiff brings this case to restore funding for two grants that were awarded to entities of the state of Washington and then terminated by the Department of Commerce's National Oceanic and Atmospheric Administration (NOAA).  But the Supreme Court has twice made clear in the last few months that grant termination lawsuits—at least ones like this that arise solely out of the plaintiff's contractual relationship with the United States and seek to enforce an obligation of the United States to pay money pursuant to a terminated federal grant—fall within the exclusive jurisdiction of the Court of Federal Claims.  Even if this Court had jurisdiction, Plaintiff's claimed harms are stated in economic terms—what it will lose without the money the grants provide.  Those asserted harms do not threaten Plaintiff's existence, are recoverable in the Court of Federal Claims, and are not at risk of becoming unavailable during the course of this litigation.  They are not irreparable.  And although Plaintiff confirmed as much when it waited three months after its grants were terminated to file this complaint, it nonetheless now claims an emergency justifying the imposition of a preliminary injunction.  Nothing about this case warrants such relief.

Plaintiff's motion fails both because the Court lacks jurisdiction and because Plaintiff has failed to prove any irreparable injury in the absence of preliminary relief.  Even setting aside these fundamental, dispositive defects, Plaintiff is unlikely to succeed on the merits of its claims because the challenged grant terminations are committed to agency discretion by law, do not implicate the Spending Clause, were reasonably explained, based on a clear source of authority of which Plaintiff had clear notice when it entered into its grant agreements, and were fully consistent with applicable regulatory guidance.  For all these reasons, and because, as the Supreme Court has recognized, the balance of equities favors the United States when injunctive relief would require it to pay out potentially unrecoverable grant funds, the Court should deny Plaintiff's motion.

# BACKGROUND

## I.    Plaintiff's Grants

Plaintiff brings this case to undo the termination of two grants awarded to entities of the state of Washington by NOAA.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 1
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

### A.    Washington Department of Ecology Award

NOAA entered into a cooperative agreement with the Washington State Department of Ecology (Ecology) pursuant to the Coastal Zone Management Act (CZMA) after applying for a Notice of Funding Opportunity entitled "CZM Projects of Special Merit Competition – FY2023."  *See* ECF No. 1-5.  Under the CZMA, NOAA is authorized, subject to certain limitations and goals, to make discretionary grants "to coastal states to provide funding for development and submission for Federal approval" of certain statutorily-defined coastal zone projects.  *See* 16 U.S.C. § 1456b(b)(1).

On September 1, 2023, NOAA awarded Ecology $250,000 to cover a project period spanning from October 1, 2023 to March 31, 2025.  ECF No. 1-7 (Ecology Award Notice).  The Notice of Award explicitly provides that the federal funding is subject to certain standard terms and conditions, including specific terms promulgated by the Department and NOAA, and the Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards (Uniform Guidance).  *Id*. at 2; *see* 2 C.F.R. Part 200 (adopted by the Department at 2 C.F.R. § 1327.1).  NOAA issued a new Notice of Award in November 2024 that effectuated two minor revisions: a change in principal investigator and an extension of the length of the award period.  *See* ECF No. 1-7 at 11-14.  NOAA did not amend the award to incorporate any changes to the operative standard terms and conditions of the award.

On May 5, 2025, NOAA notified Ecology that it would cease funding its award.  *See* ECF No. 9-6 at 2 (Ecology Termination Notice).  The termination notice cites 2 C.F.R. § 200.340(a)(2) (as discussed below, this is from the 2020 version of the Uniform Guidance), which allows a federal agency to terminate an award, "to the greatest extent authorized by law, if an award no longer effectuates the program goals or agency priorities."  *Id*.  NOAA emphasized the current administration's larger effort to "streamline and reduce the cost and size of the Federal Government," and accordingly to support only those activities "directly related" to the agency's "current programmatic goals and mission priorities."  *Id*.  NOAA determined that Ecology's award did not meet these criteria because the state's proposed use of the funds was not efficiently tailored to implement project goals, as opposed to "repeated strategy development."  *Id*.; *see also id*. (determining

that the Ecology project "proposes yet another layer of planning and outreach despite the existence of several prior state- and federally-funded initiatives that already identified the same needs").

### B.    Tribal Stewards Award

NOAA also held a "Climate Ready Workforce Competition" to award funds appropriated by the Inflation Reduction Act (IRA) to, among other things, "enable coastal communities to prepare for extreme storms and other changing climate conditions." *See* Climate Ready Workforce Notice of Funding Opportunity, ECF No. 1-8; IRA § 40001, Pub. L. No. 117-169, 136 Stat. 1818, 2028 (2022). After soliciting proposals from potential recipients that would seek to "prepare and place workers in good jobs that enhance climate resilience," ECF No. 1-8 at 4, NOAA selected the Washington State Board for Community and Technical Colleges' (WSBCTC) "Tribal Stewards" proposal and awarded WSBCTC $9,257,231 on September 11, 2024, ECF No. 1-9 (Tribal Stewards Award Notice).  Like the Ecology grant, the Tribal Stewards grant was made subject to the Department's standard terms and conditions and the government-wide Uniform Guidance. *Id.* at 4.

On May 5, 2025, NOAA notified WSBCTC that it would cease funding its award.  *See* ECF No. 10-5 at 2 (Tribal Stewards Termination Notice).  As with the Ecology grant, NOAA issued the termination notice because, consistent with governing regulations, it determined that the award no longer effectuated program goals or agency priorities.  NOAA emphasized the current administration's larger cost-cutting efforts, *see id.*, and determined that the Tribal Stewards award did not meet these criteria because it lacked "specific performance indicators, timelines, or mechanisms for evaluating success." *Id.*; *see also id.* (finding that "NOAA priorities include supporting outcome-based projects with clear deliverables, not projects with undefined long-term sustainability or effectiveness").

## II.    Regulatory Background

The Office of Management and Budget (OMB) has long issued uniform guidance on federal grant-making.  *See, e.g.*, OMB Circular A-110 (1993).  That guidance has gone through various amendments and placements in the federal code, but the background most relevant here is that on January 22, 2020, OMB proposed changes to the termination provisions, for the first time proposing that a grant could be terminated "to the greatest extent authorized by law, if an award no longer

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 3
Case No. 2:25-CV-1507-MJP

U.S. Department of Justice
1100 L St. NW
Washington, DC 20005
(202)-616-8098

effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(2) (2020). After a full notice-and-comment process, that iteration of the guidance was finalized on August 13, 2020. *See* 85 Fed. Reg. 49,506 (Aug. 13, 2020). Subsection (b) also provided that a federal awarding agency "should clearly and unambiguously specify termination provisions applicable to each Federal award, in applicable regulations or in the award." 2 C.F.R. § 200.340(b) (2020).

OMB updated the regulation and published a new final rule on April 22, 2024, which includes the currently operative 2 C.F.R. § 200.340. *See* 89 Fed. Reg. 30,046 (April 22, 2024). That rule took effect on October 1, 2024, *id*. at 30,046, and moved the grant termination provision at issue here to subsection (a)(4), which now provides that a grant can be terminated "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." 2 C.F.R. § 200.340(a)(4). OMB also modified and shortened subsection (b) to provide simply that federal agencies "must clearly and unambiguously specify all termination provisions in the terms and conditions of the Federal award." *Id*. § 200.340(b).

## III.    This Lawsuit

As noted above, NOAA terminated Plaintiff's grants on May 5, 2025, and notified the state on May 13, 2025 that termination was not subject to administrative appeal. *See* ECF No. 10-8 at 2. Plaintiff then waited nearly three months, until August 8, 2025, to file a lawsuit, alleging that the terminations violate in various respects the Administrative Procedure Act (APA), Appointments Clause, Spending Clause, and the Separation of Powers. *See* Compl., ECF No. 1. Eleven days later, Plaintiff moved for a preliminary injunction, asserting as a basis for relief only its APA and Spending Clause claims. *See* Pl.'s Mot. for Prelim. Inj., ECF No. 6 (PI Mot.).

## LEGAL STANDARD

A "preliminary injunction is an 'extraordinary and drastic remedy.'" *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citation omitted). A district court should enter a preliminary injunction only "upon a clear showing that the [movant] is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits of its claims; (2) that it is likely to suffer irreparable harm

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 4
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

in the absence of injunctive relief; (3) that the balance of equities tips in its favor; and (4) that the proposed injunction is in the public interest. *Id.* at 20.  Finally, when "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I.    Plaintiff Fails to Establish This Court's Jurisdiction.

The burden of proving subject matter jurisdiction rests with the plaintiff, and the requirement that a plaintiff establish subject matter jurisdiction "as a threshold matter 'springs from the nature and limits of the judicial power of the United States and is inflexible and without exception.'" *Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (cleaned up and citation omitted).  Plaintiff fails to carry that burden here because Congress has specifically divested federal district courts of jurisdiction over grant termination disputes.  Because Plaintiff's claims arise out of contracts with the federal government, and seek payment of monies that come only from those contracts, they can be heard only in the Court of Federal Claims.

The Tucker Act grants exclusive jurisdiction to the Court of Federal Claims over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  Thus, where a party seeks funding that it believes the federal government is obligated to pay under a contract, its suit can proceed only in the Court of Federal Claims.  Critically, the Tucker Act precludes relief under the APA or otherwise because the APA's waiver of sovereign immunity is limited to claims "seeking relief other than money damages," 5 U.S.C. § 702, and the APA does not apply "'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,'" *U.S. Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (quoting 5 U.S.C. § 702).  The Tucker Act does so for actions founded upon contracts with the United States, and its prohibition on district court jurisdiction extends to claims founded on grants, like those at issue here, that are implemented through "contracts to set the terms of and receive commitments from recipients." *Boaz Hous. Auth. v. United*

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 5
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

*States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021); *see also Medina v. Planned Parenthood S. Atl*., 145 S. Ct. 2219, 2231 (2025) (explaining that courts have historically described federal grants as contracts); *Climate United Fund v. Citibank, N.A.*, --- F.4th ----, 2025 WL 2502881, at *9 (D.C. Cir. Sept. 2, 2025) ("grant agreements are 'contracts' within the meaning of the Tucker Act because they include the traditional contract elements of offer, acceptance, and consideration"). This jurisdictional barrier ensures that contract claims against the United States are channeled into a court that has "unique expertise," *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 78 (D.C. Cir. 1985).

On multiple recent occasions, the Supreme Court has emphasized the preclusive scope of the Tucker Act in litigation challenging the termination of federal grants. In April, the Supreme Court stayed a district court order to make payments to states based on grants because the federal government was "likely to succeed in showing the District Court lacked jurisdiction" to bar termination of various education-related grants. *California*, 145 S. Ct. at 968. The Supreme Court held the injunction was effectively an order "to enforce a contractual obligation to pay money," and thus not covered by the APA's limited waiver of sovereign immunity; instead, the Tucker Act grants the Court of Federal Claims exclusive jurisdiction over such suits. *Id.* (citation omitted). Then, just last month, the Supreme Court stayed another judgment vacating the federal government's termination of grants, reiterating its view that the APA's limited waiver of sovereign immunity does not afford district courts jurisdiction "to order relief designed to enforce any 'obligation to pay money'" pursuant to the grants. *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 2025 WL 2415669, at *1 (U.S. Aug. 21, 2025) (*NIH*) (quoting *California*, 145 S. Ct. at 968). Courts in multiple other circuits have followed the Supreme Court's guidance to reject the same type of grant termination challenge that Plaintiff seeks here. *See, e.g.*, *Sustainability Inst. v. Trump*, 2025 WL 1587100 (4th Cir. June 5, 2025); *Climate United Fund*, 2025 WL 2502881; *Appalachian Voices v. EPA*, 2025 WL 2494905, at *4-9 (D.D.C. Aug. 29, 2025) (dismissing APA and constitutional challenges to EPA grant termination).

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 6
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

The Supreme Court's recent authority controls this case because Plaintiff is plainly seeking to enforce an obligation to pay money pursuant to the grants at issue in this case.[1]  Although it purports to seek an injunction, the relief Plaintiff requests—uninterrupted grant funding pursuant to its federal grants—is fundamentally contractual.  Indeed, Plaintiff explicitly requests that the Court enjoin Defendants from terminating its grants and from in any way "[i]mpeding Washington's access to the full amount of funds obligated to Washington through each of the above referenced awards." Proposed Preliminary Inj., ECF No. 6-1.  As in *California* and *NIH*, any entitlement that Plaintiff may have to the funding it seeks to preserve arises solely on the basis of its federal grant awards; it has no statutory or constitutional right to such funding.  Because its theories of standing, relief, and irreparable harm hinge entirely on contractual routing of funding to it as provided for in its grant agreements, the fact that Plaintiff cloaks its claims as seeking equitable relief under the Constitution and the APA is irrelevant.  The "jurisdictional inquiry cannot turn on a plaintiff's preferred characterization of its claim, lest we 'upset the carefully modulated waiver of sovereign immunity and grant of remedies for breach of contract embodied in the Tucker Act.'" *Climate United Fund*, 2025 WL 2502881, at *4 (citation omitted); *accord, e.g.*, *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995) (courts must look to claims' "substance, not merely [their] form"); *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act . . . .").

---

[1] On August 21, 2025, the Ninth Circuit issued a decision denying the federal government's application for a stay in *Thakur v. Trump*, --- F.4th ----, 2025 WL 2414835 (9th Cir. Aug. 21, 2025). Although that decision rejected the government's Tucker Act argument, its reasoning is overridden by the Supreme Court's *NIH* decision, issued hours later.  "[W]here intervening Supreme Court authority is clearly irreconcilable" with an opinion of the Circuit "district courts should consider themselves bound by the intervening higher authority" and must "reject the prior opinion." *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc).  Further, "circuit precedent, authoritative at the time it issued, can be effectively overruled by subsequent Supreme Court decisions that are closely on point, even though those decisions do not expressly overrule the prior circuit precedent." *Id.* at 899 (citation omitted).  Even assuming *arguendo* that *Thakur* could be reconciled with *California*, the subsequently issued *NIH* decision removes any doubt that grant termination disputes like this one belong in the Court of Federal Claims.  As Justice Gorsuch emphasized, "regardless of a decision's procedural posture, its 'reasoning—its *ratio decidendi*—carries precedential weight in 'future cases.'" *NIH*, 2025 WL 2415669, at *4 (Gorsuch, J., concurring in part and dissenting in part) (citation omitted).

At bottom, Plaintiff "wants the Government to keep paying up." *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, ---F. Supp. 3d---, 2025 WL 763738, at *5-6 (D.D.C. Mar. 11, 2025). Such claims are "founded upon a contract," and they "must be heard in Claims Court." *Id.* at *7 (quoting *Sharp v. Weinberger*, 798 F.2d 1521, 1524 (D.C. Cir. 1986) (Scalia, J.) ("We know of no case in which a court has asserted jurisdiction . . . to issue an injunction compelling the United States to fulfill its contractual obligations.")).

## II.   Plaintiff Fails To Establish Irreparable Harm.

The "most important" *Winter* factor is irreparable harm. *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). That standard requires plaintiffs seeking preliminary relief to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22.

Plaintiff fails to make this showing for several reasons, but at the outset, its three-month delay in filing suit should foreclose preliminary injunctive relief. A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993). Indeed, courts have denied preliminary injunction motions based on delays of similar length or shorter than Plaintiff's. *See, e.g.*, *Valeo Intellectual Prop., Inc. v. Data Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) ("A three-month delay in seeking injunctive relief is inconsistent with [the plaintiff's] insistence that it faces irreparable harm."); *Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) (one-month delay). This Court should do the same.

Even setting that aside, the harms Plaintiff asserts are economic and thus reparable.[2] The purpose of this lawsuit is to preserve federal funding pursuant to Plaintiff's grant agreements with the

---

[2] Plaintiff also briefly alleges harm to its "sovereign interests in protecting its residents' welfare, state and local economies, and the environment." PI Mot. at 19. Such vague asserted interests are significantly downstream from the challenged grant terminations and would not even provide a basis for standing in this suit against the federal government, much less irreparable injury. *Cf., e.g.*, *Haaland v. Brackeen*, 599 U.S. 255, 294-95 (2023) (states lack *parens patriae* standing to sue the federal government); *Washington v. FDA*, 108 F.4th 1163, 1176 (9th Cir. 2024) (rejecting state standing argument based on "preservation of sovereign authority"). Nor are Plaintiff's speculative assertions of "[r]eputational harm," PI Mot. at 23, sufficient. "Damages to goodwill and reputation have typically supported findings of irreparable harm only where evidence clearly supports such damage," *Battele Energy All., LLC v. Southfork Sec., Inc.*, 980 F. Supp. 2d 1211, 1221 (D. Ida. 2013) (citing *Goldie's*

federal government and, as discussed elsewhere, Plaintiff has an adequate avenue to pursue such relief in the Court of Federal Claims.  The associated injuries that Plaintiff hypothesizes will result from losing that funding—*e.g.*, threatening the programs that the grants fund, PI Mot. at 20, interfering with its "ability to budget" and "plan for the future," *id.* at 21, and the dedication of "significant state resources" to those programs, *id.* at 22—are definitionally not irreparable.  *See, e.g.*, *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320-21 (9th Cir. 1994); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).  This is especially true because Plaintiff alleges no "threat of being driven out of business." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985).  Its alleged loss of "time, effort, and non-federal funds" if the awards are terminated, PI Mot. at 2, are insufficient because "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [preliminary relief] are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see also, e.g.*, *Faculty Senate of Fla. Int'l Univ. v. Winn*, 477 F. Supp. 2d 1198, 1208 (S.D. Fla. 2007) (no irreparable harm where "the harm is financial").

Plaintiff's only real retort is to assert that emergency relief is required because, if this case proceeds on an ordinary timeline, Plaintiff faces a "permanent" risk of losing its awards "if the funds are otherwise obligated or expire."  PI Mot. at 22.  This unsupported claim is inconsistent with fundamental principles of appropriations law.  Most importantly, because the funds had been obligated to Plaintiff, they would likely remain available for an additional five fiscal years beyond their obligational period of availability "for recording, adjusting, and liquidating obligations properly chargeable" to the appropriation. 31 U.S.C. § 1553(a); *see* 31 U.S.C. § 1552(a).  The IRA funds used to obligate the Tribal Stewards award would remain available for disbursement until September 30, 2031.  *See id*.  And the funds used for the Ecology grant had been obligated pursuant to an appropriation that expired on September 30, 2024, *see* Pub L. No. 117-328, 136 Stat. 4459, 4516 (2022) (general appropriation for NOAA grants), so they will remain available for disbursement until

---

*Bookstore v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984)), and Plaintiff comes nowhere close to carrying that burden here.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 9
Case No. 2:25-CV-1507-MJP

U.S. Department of Justice
1100 L St. NW
Washington, DC 20005
(202)-616-8098

September 30, 2029. The four years between now and then provides plenty of time to resolve Plaintiff's claims to the funds without risk that the money will become unavailable during the pendency of the case.[3] *See, e.g.*, *Westchester v. U.S. Dep't of Hous. & Urb. Dev.*, 778 F.3d 412, 417 n.8 (2d Cir. 2015) (concluding that a case was not moot even though the obligation period for the challenged funds had expired because the agency had five additional years to pay its obligations).

## III.    Plaintiff's APA Claims Are Not Likely To Succeed.

Even if the Court were to conclude it had jurisdiction over Plaintiff's contract dispute with the United States, the state's APA claims fail both at the threshold and on the merits. Fundamentally, the allocation of appropriations is committed to agency discretion by law. And even setting that aside, the terminations were consistent with applicable law and the product of reasoned decisionmaking.

### A.    The Grant Terminations Are Committed To Agency Discretion By Law.

The termination of federal funding is quintessential agency action "committed to agency discretion by law," for which the APA does not provide an avenue for review. 5 U.S.C. § 701(a)(2). While the APA establishes a waiver of sovereign immunity and a cause of action for injunctive relief for parties adversely affected by either final agency action or an agency's failure to act, 5 U.S.C. §§ 702, 706(1)-(2), the waiver of sovereign immunity is limited: it does not apply in circumstances where "agency action is committed to agency discretion by law." *Id.* § 701(a)(2). Review under the APA therefore is unavailable "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

The Supreme Court has long recognized that an agency's determination of how to allocate appropriated funds among competing priorities and recipients is classic discretionary agency action. *See Lincoln* v. *Vigil*, 508 U.S. 182, 193 (1993). In *Lincoln*, the Court explained that there is no waiver of sovereign immunity where agency action requires "a complicated balancing of a number of factors

---

[3] Nor are the funds likely to be obligated to any other grantee or used for any purpose other than to reinstate the award if Plaintiff is ultimately successful. *See* One Big Beautiful Bill Act § 40008, Pub. L. No. 119-21, 139 Stat. 72, 136 (2025) (rescinding unobligated balance of amounts appropriated by IRA Sections 40001 to 400004); Pub. L. No. 117-328, 136 Stat. at 4516 (general NOAA appropriation for grants, available until September 30, 2024).

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 10
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

which are peculiarly within [the agency's] expertise," including whether "resources are best spent on one program or another; whether it is likely to succeed in fulfilling its statutory mandate; whether a particular program best fits the agency's overall policies; and, indeed, whether the agency has enough resources to fund a program at all." *Id.* (citations omitted). An "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* (citation omitted). The APA "gives the courts no leave to intrude" via arbitrary-and-capricious review. *Id.*

Moreover, Courts have made clear that *Lincoln*'s logic extends to funding programs that leave to the agency "the decision about how the moneys" for a particular program "could best be distributed consistent with" the statute. *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002). Such decisions—like decisions regarding how best to allocate lump-sum appropriations—"clearly require[] 'a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise.'" *Id.* at 752 (citation omitted); *see also Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018).

That reasoning fully applies to the grants at issue here where, in both instances, Congress generally left it to the agency to award grants at the agency's discretion. *See* 16 U.S.C. § 1456b(b) (statutory authority for Ecology grant, providing that the Secretary of Commerce, subject to certain limitations, "may make grants to coastal states"); Pub. L. No. 117-328, 136 Stat. at 4516 (open-ended appropriation for NOAA grants); IRA § 40001 (lump sum appropriation for Tribal Stewards grant).

As another court recently held:

> Although an agency is required to use earmarked funds for their specific purpose, an agency may still exercise discretion *within* the earmark. If, for example, Congress earmarks funds for the Navy to build a certain type of ship, the Navy has discretion to use the money to complete construction of two less expensive ships or to spend the money on one more expensive ship.

*Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.*, 2025 WL 1852762, at *14 (D.D.C. July 6, 2025) (emphasis in original) (agency's decision to terminate certain grant programs not subject to judicial review under the APA).

Because the Department has broad discretion to set funding priorities and determine whether and when to exercise contractual rights to terminate grant agreements, the "committed to agency

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 11
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

discretion by law" bar applies to foreclose Plaintiff's APA challenges to the Department's termination decisions.

**B.    The Grant Terminations Are Consistent With Applicable Regulations.**

Plaintiff also contends that the Department's terminations of its grants are "not in accordance with" OMB's grant regulations, PI Mot. at 11, which Plaintiff defines as "2 C.F.R. Part 200, as adopted by NOAA pursuant to 2 C.F.R. § 1327.101." *Id.* at 4.  These arguments fail.

1.    To begin, the Department provided legally sufficient notice that Plaintiff's grants were subject to termination to the extent they did not effectuate program goals or agency priorities.  For the Ecology grant, which was awarded in September 2023, the 2020 version of the Uniform Guidance applies.  *See supra* p. 4 (discussing current guidance taking effect on October 1, 2024).  That guidance recommended, but did not require, that agencies "clearly and unambiguously specify termination provisions applicable to each Federal award, in applicable regulations or in the award."  2 C.F.R. § 200.340(b) (2020).  Any contention that the termination provision *must* be included in the Federal award, *see* PI Mot. at 11-12, is thus belied by the regulation's plain text.  In any event, the Ecology grant award expressly incorporates the Uniform Guidance (and its provision allowing for termination "if an award no longer effectuates the program goals or agency priorities"), which itself is one of the "applicable regulations" that can specify grant termination provisions.  And for the Tribal Stewards grant, regardless of which version of the Uniform Guidance applies,[4] the Department provided sufficient notice because that grant award incorporates the National Science Foundation Research Terms and Conditions, which in turn "incorporate[] and restate[]" the provisions of 2 C.F.R. § 200.340, including its provisions for termination of grants that no longer effectuate agency priorities, in their entirety.  *See* Tribal Stewards Award Notice at 4; U.S. National Science Foundation, Research Terms and Conditions at 18 (Nov. 12, 2020), https://perma.cc/3TBS-C9AC; *see also* 2 C.F.R. § 200.340(b) ("The Federal agency or pass-through entity must clearly and unambiguously specify all termination provisions in the terms and conditions of the federal award.").

---

[4] Although the Tribal Stewards grant was awarded on September 11, 2024, before 2 C.F.R. § 200.340(a) was updated on October 1, 2024, the notice of termination cites current 2 C.F.R. § 200.340(a)(4).  Tribal Stewards Termination Notice at 2.

Plaintiff also cites 2 C.F.R. § 200.211(c)(1)(v), but the same result obtains.  That provision offers guidance on the terms and conditions included in an agency award and specifies that agencies "must inform recipients of the termination provisions in § 200.340, including the applicable termination provisions in the Federal agency's regulations or terms and conditions of the Federal award." 2 C.F.R. § 200.211(c)(1)(v).  This notice requirement can be incorporated "either in the Federal award or by reference," *id*. § 200.211(c), and Plaintiff's award documents clearly incorporate by reference the government-wide regulations about grant terminations and, with respect to the Tribal Stewards grant, its restatement in the National Science Foundation Research Terms and Conditions. *See* Ecology Award Notice at 2; Tribal Stewards Award Notice at 2.  In short, the Department provided Plaintiff clear and unambiguous notice that its grants could be terminated for the reason they have now been terminated, and Plaintiff's hyper-technical parsing of the regulatory language provides no basis for this Court to set aside the terminations—and certainly not in the context of requests for emergency injunctive relief.

2.    Plaintiff next argues that the relevant guidance must be interpreted to authorize only the termination of "awards that no longer effectuate the specific program goals and agency priorities identified at the time of the award."[5]  PI Mot. at 12.  But that just means the award effectuated agency priorities at one point but does not any longer.  The disconnect can arise from changes on either end— either something happened to the award (*e.g.*, the grantee is no longer the best choice), or something happened at the agency (*e.g.*, the priorities changed), or both.  Either way, the award "no longer effectuates . . . agency priorities" within the meaning of 2 C.F.R. § 200.340(a)(4).  Plaintiff identifies nothing in the regulation's text that freezes the relevant "agency priorities" in place at the time the award was made.

Plaintiff's interpretation is also inconsistent with the overall structure of 2 C.F.R. § 200.340. In particular, Plaintiff ignores the immediately preceding sub-section, which generally allows the

---

[5] Plaintiff addresses the current version of the guidance, not the 2020 version.  While small differences between the two versions are relevant for some purposes, as discussed above, the "no longer effectuates" language is the same, so for consistency in the briefing Defendants generally cite to the current version of the regulation in this section of the brief.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 13
Case No. 2:25-CV-1507-MJP

"recipient" of the grant to terminate it in part, after providing notice.  *See* 2 C.F.R. § 200.340(a)(3).

Then, in the case of a partial termination by the grantee, when it comes to the leftover portion of the

grant, the agency may then "terminate the Federal award in its entirety"—but only if the agency

"determines that the remaining portion of the Federal award will not accomplish the purposes for

which the Federal award was made."  *Id.*  That is a backward-looking inquiry, stated in the past tense,

about the state of the world at the time "the Federal award *was made*."  *Id.* (emphasis added).

Plaintiff's interpretation of 2 C.F.R. § 200.340(a)(4), on the other hand, requires implicitly

reading into the regulation language that the drafters omitted—in particular, language restricting any

consideration of the agency's priorities to those in effect at the time "the Federal award was made."

*Id.*  It is telling that the immediately preceding sub-section uses exactly that sort of language, and

explicitly calls for the very sort of backward-looking, past-tense analysis that Plaintiff insists is

(silently) required by § 200.340(a)(4).  Section 200.340(a)(4) contains no similar language.  To the

contrary, it is stated in the *present* tense—calling for a here-and-now analysis of whether the award

*currently* "effectuates the program goals or agency priorities," in the present.  *Id.*

"[W]e generally 'presume differences in language like this convey differences in meaning.'"

*Rudisill v. McDonough*, 601 U.S. 294, 308 (2024) (citation omitted).  Whether interpreting statutes,

regulations, or contracts, "[w]here [a] document has used one term in one place, and a materially

different term in another, the presumption is that the different term denotes a different idea."

*Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) (quoting A. Scalia & B. Garner, Reading

Law 170 (2012)).  And just as "Congress' use of a verb tense is significant in construing statutes,"

*United States v. Wilson*, 503 U.S. 329, 333 (1992), OMB's use of the past tense in (a)(3) and the

present tense in (a)(4) is significant in construing 2 C.F.R. § 200.340.  So, not only is there nothing in

the plain text of sub-section (a)(4) that would restrict an agency's focus to its old priorities (to the

exclusion of its new priorities), but the presence of exactly that sort of language in sub-section (a)(3)

makes it impossible to imagine that OMB intended for the same kind of limitation to apply in sub-

section (a)(4), without saying so.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 14
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

Plaintiff contends that "allowing terminations based on mid-award priority changes would render superfluous many other provisions" circumscribing when agencies can terminate grants.  PI Mot. at 14.  This is not the case.  Unlike in sub-section (a)(4), termination under sub-sections (a)(1) and (a)(2) can be accomplished even when the grant *continues* to "effectuate[] the program goals or agency priorities," 2 C.F.R. § 200.340(a)(4).  For example, assume that "agency priorities" are likely to remain relatively stable between now and January 2029.  On that assumption, without the authority in 2 C.F.R. § 200.340(a)(1), an agency could not terminate a grant even if the grantee "fails to comply with the terms and conditions of the Federal award."  That would be untenable.  And 2 C.F.R. § 200.340(a)(3) is even more obviously not surplusage, because it allows—unlike any other sub-section—for termination initiated by the grantee.  Of course, even if Plaintiff had shown that the government's interpretation led to some overlap, "[t]he canon against surplusage is not an absolute rule," *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013), and cannot overcome plain text.

Nor does the government's interpretation result in the Department "hid[ing] elephants in mouseholes."  PI Mot. at 13-14 (quoting *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 203 (5th Cir. 2019)).  In fact, 2 C.F.R. § 200.340(a)(4) is, "at the risk of the tired metaphor spinning out of control, less a mousehole and more a watering hole—exactly the sort of place we would expect to find this elephant."  *Atlantic Richfield Co. v. Christian*, 590 U.S. 1, 22 (2020).  After all, 2 C.F.R. § 200.340 is titled "Termination," and 2 C.F.R. § 200.340(a) explicitly lists the circumstances in which a "Federal award may be terminated in part or its entirety."  No reasonable reader of OMB's regulations should be surprised to see that grant-making agencies have discretionary authority to terminate discretionary grants.

Finally, even setting aside the text and structure of the regulation, Plaintiff's interpretation of § 200.340(a)(4) is highly counterintuitive and impossible to square with its purpose.  Drafted by OMB, it explicitly references "agency priorities" in a sentence about changes over time.  2 C.F.R. § 200.340(a)(4).  That is unsurprising, because OMB is quite familiar with the possibility of significant changes to "agency priorities" over time—including, but not limited to, after a change in Presidential administration.  Because every modern President has relied on OMB to "help[] a wide range of

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 15
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

executive departments and agencies across the Federal Government to implement the commitments and priorities of the President," *see, e.g.*, The White House, *The Mission and Structure of the Office of Management and Budget*,[6] it is hard to see why OMB would draft a regulation (1) about changed circumstances, (2) explicitly referencing "agency priorities," but (3) that also (silently) *prohibited* consideration of *new* "agency priorities." 2 C.F.R. 200.340(a)(4). After all, there is nothing unusual or improper about an agency changing priorities—even dramatically—in response to new direction from politically accountable leadership. *Cf. Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) ("[A] court may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities."); *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 59 (2009) (Rehnquist, J., concurring in part and dissenting in part) ("A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations."). In large part, that is what elections are for. Given that backdrop, and OMB's core mission, it is hard to imagine that in explicitly referencing "agency priorities" in 2 C.F.R. § 200.340(a)(4), OMB intended to foreclose consideration of *new* agency priorities—all without saying so expressly.

3. Plaintiff also asserts a half-hearted claim, deserving of exactly three sentences in its brief, that the terminations failed to follow required procedures. *See* PI Mot. at 14. That argument can be rebutted in similarly cursory terms. The procedures that Plaintiff cites, which appear at 2 C.F.R. § 200.342, apply only where an agency "initiat[es] a remedy for noncompliance." Here, however, the termination is not based on noncompliance. Accordingly, the agency is not required to give the recipient any opportunity "to object and provide information challenging the action." *Id.* This makes perfect sense in this context, where the only relevant inquiry is whether the grant effectuates the granting agency's priorities, a topic on which the grant recipient would not be expected to have any expertise or information.

---

[6] *Available at* https://obamawhitehouse.archives.gov/omb/organization_mission/.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 16
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

1    **C.    The Grant Terminations Are Not Arbitrary and Capricious.**

2        For the reasons discussed above, arbitrary and capricious review is inappropriate in the context

3    of the challenged grant terminations.  But even if the Court were to apply that deferential standard, the

4    challenged terminations would pass muster.

5        Under the arbitrary and capricious standard, the agency's decision is presumed valid, and a

6    court reviews only whether that decision "was based on a consideration of the relevant factors and

7    whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe*,

8    401 U.S. 402, 416 (1971).  "Judicial review under that standard is deferential, and a court may not

9    substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592

10    U.S. 414, 423 (2021).  A court must "uphold [even] a decision of less than ideal clarity if the agency's

11    path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009)

12    (citation omitted).  And in the context of federal contracting, courts apply a particularly lenient

13    standard of review. *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010)

14    ("[D]etermining an agency's minimum needs 'is a matter within the broad discretion of agency

15    officials . . . and is not for [the] court to second guess.'" (citation omitted)).

16        Plaintiff asserts a grab bag of arguments, but none of them requires the Department to maintain

17    grants that no longer effectuate its priorities.  Plaintiff primarily argues that the terminations fail to

18    comply with OMB regulations, but as discussed above, that is not the case. *See supra* Sec. III.B.

19    Plaintiff also quibbles with various aspects of the Department's reasoning and ultimate decisions to

20    terminate the grants. *See* PI Mot. at 15-17.  But as discussed above, the Department provided written

21    notice to Plaintiff identifying the "reasons for termination, the effective date, and the portion of the

22    Federal award to be terminated," 2 C.F.R. § 200.341(a), specifically explaining what about each

23    federal award led to the Department's conclusion that its goal and priorities—including reducing the

24    cost and size of the federal government and limiting funding to only the most necessary projects—

25    were no longer effectuated by the award. *See* Ecology Termination Notice ("Specifically, NOAA has

26    concluded that this project proposes yet another layer of planning and outreach despite the existence

27    of several prior state- and federally-funded initiatives that already identified the same needs."); Tribal

Stewards Termination Notice ("Specifically, NOAA has concluded that though the program promises 'robust assessment' and dissemination of findings, it lacks specific performance indicators, timelines, or mechanisms for evaluating success.").  Plaintiff disagrees with these conclusions, but under the APA, it is the agency's assessment that is entitled to deference.  *See, e.g.*, *California v. Azar*, 950 F.3d 1067, 1096 (9th Cir. 2020) (a court is "prohibited from 'second-guessing the [agency's] weighing of risks and benefits and penalizing [it] for departing from the . . . inferences and assumptions' of others" (citation omitted)).  This is particularly true here, where the agency has expertise—and Plaintiff has none—in assessing how a funding project aligns with the agency's goals and priorities.  Ultimately, the decisions were "reasonable and reasonably explained." *Prometheus Radio Project*, 592 U.S. at 423, and neither the governing regulations nor the APA's deferential standard require anything more.

Plaintiff also asserts that the terminations "rest on an unexplained and unreasoned change in Defendants' interpretation of § 200.340," PI Mot. at 17, but it does not identify any prior interpretation with which its grant terminations conflict.  As discussed above, the relevant regulatory language was first introduced in 2020 and has always allowed for grants to be terminated if they no longer effectuate agency priorities.  Plaintiff continues to search for new ways to dress up the same disagreement with the Department's interpretation of the Uniform Guidance, but this attempt fails for the same reason as all the others:  the Department, pursuant to terms subject to notice and comment rulemaking and incorporated into binding contracts that Plaintiff signed, effectuated an established authority to determine whether grant awards are in conformity with current priorities.  Finally, with respect to Plaintiff's arguments about reliance, it is exceedingly unlikely that anyone has a reliance interest in continued discretionary funding that, by its own terms, is subject to unilateral termination. *Tennessee v. Becerra*, 131 F.4th 350, 370 (6th Cir. 2025) ("Tennessee likely has no legally cognizable reliance interest in the receipt of a discretionary funding award on the conditions that it prefers." (emphasis removed)).  The Court should accordingly reject Plaintiff's arbitrary and capricious claims.

## IV.   Plaintiff's Spending Clause Claim Is Not Likely To Succeed.

Congress has the power to "lay and collect Taxes, Duties, Imports, and Excises, to pay the Debts and provide for the common Defence and general welfare of the United States."  U.S. Const.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 18
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

art. I § 8, cl.1.  Pursuant to that authority, Congress has "broad power" to "set the terms on which it disburses federal funds."  *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 216 (2022). Congress has long "condition[ed] receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives," *South Dakota v. Dole*, 483 U.S. 203, 206 (1987), and the Supreme Court has recognized that Congress may leave the particulars of implementing a spending program to the agency charged with administering the program.  *See, e.g.*, *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 670 (1985) (assessing state compliance with federal funding conditions based on "the statutory provisions, regulations, and other guidelines provided by the [agency] at that time"); *Biden v. Missouri*, 595 U.S. 87, 92-96 (2022); *accord New York v. DOJ*, 951 F.3d 84, 110 (2d Cir. 2020) (noting that the Supreme Court has "upheld an administering agency's clarifying interpretations, and even its violation determinations, as long as they were grounded in 'statutory provisions, regulations, and other guidelines provided by the Department' at the time of the grant").

Plaintiff bases its Spending Clause argument on *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1 (1981), citing that case for the familiar principle that "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously."  PI Mot. at 9 (quoting *Pennhurst*, 451 U.S. at 17).  But that principle has no application here, where no "condition" is being "imposed" and Plaintiff is challenging a federal agency's decision to terminate a discretionary grant based on changed agency priorities.  Plaintiff is not, for example, confronting an effort to recoup previously awarded grant funds or seeking to avoid liability on the basis of prior grant conditions. Thus, the "federalism-based clear-statement rule" of *Pennhurst* is not implicated, *Kentucky v. Yellen*, 54 F.4th 325, 347 (6th Cir. 2022), and it provides no basis to override the Department's decision to terminate Plaintiff's discretionary grants.

Even if *Pennhurst* and the Spending Clause were actually at issue here, the relevant standards are satisfied because the challenged notices terminate Plaintiff's grants based on authority that expressly appears in the Code of Federal Regulations and is incorporated into Plaintiff's grant documents.  Plaintiff was plainly on notice of this basis for termination when it accepted its grant awards.  *See, e.g.*, *Tennessee*, 131 F.4th at 363-64 (no Spending Clause violation where recipient of

1    funds was on clear notice that it was required to follow applicable regulatory requirements and

2    voluntarily agreed to abide by them).  In this context, "if a State is unaware of the conditions" imposed

3    on its grants, *Pennhurst*, 451 U.S. at 17, that can be explained only by its failure to read the regulations,

4    the grant documents, or both.

5        Plaintiff argues that the grant termination decisions were "impermissibly vague," PI Mot. at 9,

6    and "retroactive[]," *id.* at 10, but those are just rehashes of its argument that the Department's

7    interpretation of section 200.340(a)(4) is contrary to law, and they fail for the same reasons.  *See supra*

8    Sec. III.B.  Because the Department has correctly interpreted the governing regulation to allow for

9    termination any time a federal award does not effectuate current agency priorities, it does not somehow

10   impose impermissibly vague or retroactive conditions by acting upon that authority to cancel a federal

11   award for the express reason that the regulation authorizes (and authorized at the time Plaintiff

12   executed its awards).

13   **V.    The Balance Of The Equities Weigh In The Federal Government's Favor.**

14       Lastly, Plaintiff cannot establish that the balance of equities and public interest favor granting

15   the extraordinary remedy of preliminary relief.  These final two factors merge in cases where relief is

16   sought from the government.  *Nken*, 556 U.S. at 435.

17       The Supreme Court in *California* squarely explained that the balance of the equities favors the

18   federal government in this context.  The public interest is harmed when the United States is forced to

19   pay out funds that it may not be able to recover.  *California*, 145 S. Ct. at 969; *see also Heckler v.*

20   *Turner*, 468 U.S. 1305, 1307-08 (1984) (Rehnquist, J., in chambers) (prospect of the government being

21   forced to make $1.3 million in improper payments per month supported a stay of injunction).  In *NIH*,

22   the Supreme Court reaffirmed this conclusion, emphasizing that the federal government is irreparably

23   harmed if its funds "cannot be recouped," such as when federal grant recipients "do not state that they

24   will repay grant money if the Government ultimately prevails".  *NIH*, 2025 WL 2415669, at *1

25   (citation omitted); *see also id.* at 6 (Kavanaugh, J., concurring in part).

26       This is all in addition to the fact that any injunction interfering with the President's priorities

27   is itself a substantial harm in the balance of the equities analysis.  "Any time [the Government] is

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 20
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098

enjoined by a court from effectuating [laws], it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted).  To the extent the Court finds the balance of various factors close, this equities analysis should tip against an injunction.

## VI.    Any Injunctive Relief Should Be Stayed Pending Appeal and Be Accompanied By A Bond.

To the extent the Court issues any injunctive relief, Defendants respectfully request that such relief be stayed pending the disposition of any appeal that is authorized by the Solicitor General, or at a minimum, administratively stayed for a period of seven days to allow the United States to consider whether to seek an emergency, expedited stay from the court of appeals if an appeal is authorized.

Defendants also respectfully request that any injunctive relief accompany a bond under Fed. R. Civ. P. 65(c), which provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  A bond is appropriate here given that any preliminary relief would potentially mandate that the Executive spend money that may be lost forever once distributed.  *California*, 145 S. Ct. at 969.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiff's motion for a preliminary injunction.

DATED: September 12, 2025                   Respectfully submitted,


                                            BRETT A. SHUMATE
                                            Assistant Attorney General


                                            JOSEPH E. BORSON
                                            Assistant Branch Director


                                            */s/ R. Charlie Merritt*
                                            R. CHARLIE MERRITT
                                            Senior Counsel (VA Bar No. 89400)
                                            U.S. Department of Justice

Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 616-8098
E-mail: robert.c.merritt@usdoj.gov

*Attorneys for Defendants*

*I certify that this memorandum contains 8,223 words, in compliance with the Local Civil Rules.*

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 22
Case No. 2:25-CV-1507-MJP

U.S. DEPARTMENT OF JUSTICE
1100 L ST. NW
Washington, DC 20005
(202)-616-8098