The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>PLAINTIFF,<br><br>v.<br><br>U.S. DEPARTMENT OF COMMERCE, et al.,<br><br>DEFENDANTS. | NO. 2:25-CV-1507-MJP<br><br>PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION<br><br>NOTE ON MOTION CALENDAR: SEPTEMBER 19, 2025<br><br>ORAL ARGUMENT REQUESTED |



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

## TABLE OF CONTENTS

I. INTRODUCTION .... 1

II. ARGUMENT .... 1

A. This Court Has Jurisdiction .... 1

B. Plaintiff is Likely to Succeed on the Merits .... 4

1. Defendants' Terminations are Reviewable .... 4

2. Defendants' Terminations Violate Applicable Regulations .... 5

3. Defendants' Terminations Are Arbitrary and Capricious .... 7

4. Defendants' Terminations Violate the Spending Clause .... 8

C. Plaintiffs Face Irreparable Harm .... 10

D. The Balance of Equities Favor an Injunction .... 12

E. No Bond or Stay Should Issue .... 13

III. CONCLUSION .... 13



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

# TABLE OF AUTHORITIES

## Cases

*American Near East Refugee Aid v. United States Agency for International Development*, 703 F. Supp. 3d 126 (D.D.C. 2023) .......... 2, 3

*Anchorage v. United States,* 119 Fed. Cl. 709 (Fed. Cl. 2015) .......... 3

*ARC of California v. Douglas*, 757 F.3d 975 (9th Cir. 2014) .......... 11

*Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023) .......... 4

*Bennett v. Kentucky Department of Education*, 470 U.S. 656 (1985) .......... 9

*California v. Azar*, 950 F.3d 1067 (9th Cir. 2020) .......... 7

*City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019) .......... 8

*Community Legal Services in East Palo Alto v. United States Department of Health and Human Services*, 137 F.4th 932 (9th Cir. 2015) .......... 4

*Department of Commerce v. New York*, 588 U.S. 752 (2019) .......... 7, 8

*Department of Education v. California,* 145 S. Ct. 966 (2025) .......... 1, 3, 12

*Department of Homeland Security v. Regents of the University of California*, 591 U.S. 1 (2020) .......... 8

*East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) .......... 10

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council,* 485 U.S. 568 (1988) .......... 10

*Erie Boulevard Hydropower, LP v. Federal Energy Regulatory Commission*, 878 F.3d 258 (D.C. Cir. 2017) .......... 7



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

*Faith International Adoptions v. Pompeo*,
345 F. Supp. 3d 1314 (W.D. Wash. 2018) .................................................................. 5

*Federal Communications Commission v. Prometheus Radio Project*,
592 U.S. 414 (2021)................................................................................................ 7

*Flores-Chavez v. Ashcroft*,
362 F.3d 1150 (9th Cir. 2004) .................................................................................. 10

*Hymas v. United States*,
810 F.3d 1312 (Fed. Cir. 2016) ............................................................................. 2, 3

*In re Pacific Market International, LLC, Stanley Tumbler Litigation*,
764 F. Supp. 3d 1026 (W.D. Wash. 2025) .................................................................. 8

*Johnson v. Couturier*,
572 F.3d 1067 (9th Cir. 2009) .................................................................................. 13

*Lincoln v. Vigil*,
508 U.S. 182 (1993)................................................................................................ 4

*Marx v. General Revenue Corp.*,
568 U.S. 371 (2013)................................................................................................ 6

*National Leased Housing Association v. United States*,
105 F.3d 1423 (Fed. Cir. 1997) ................................................................................ 1

*National Institutes of Health v. American Public Health Association*,
2025 WL 2415669 (U.S. Aug. 21, 2025) ............................................................ 1, 3, 12

*Newdow v. Bush,*
355 F. Supp. 2d 265 (D.D.C. 2005)........................................................................... 11

*National Labor Relations Board v. California Pacific Medical Center,*
991 F.2d 536 (9th Cir. 1993) .................................................................................... 11

*Price v. Stevedoring Services of America, Inc.*,
697 F.3d 820 (9th Cir.2012) ...................................................................................... 5

*Raytheon Company v. United States*,
175 Fed. Cl. 281 (Fed. Cl. 2025) ............................................................................... 2

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*
944 F.2d 597 (9th Cir. 1991) .................................................................................... 10

*Ryder v. Union Pacific Railroad Company*,
945 F.3d 194 (5th Cir. 2019)...................................................................................... 7

*Sampson v. Murray*,
415 U.S. 61 (1974).................................................................................................. 11



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

*San Antonio Housing Authority v. United States*,
143 Fed. Cl. 425 (2019) .......... 2

*San Francisco Unified School District v. AmeriCorps*,
25-CV-02425-EMC, 2025 WL 1713360 (N.D. Cal. June 18, 2025) .......... 9

*SEC v. Chenery Corp.*,
332 U.S. 194 (1947) .......... 7

*Sierra Club v. Salazar*,
177 F. Supp. 3d 512 (D.D.C. 2016) .......... 8

*St. Bernard Parish Government v. United States*,
134 Fed. Cl. 730 (2017) .......... 2, 3

*Stanley v. University of Southern California*,
13 F.3d 1313 (9th Cir. 1994) .......... 10

*State v. Department of Justice*,
951 F.3d 84 (2d Cir. 2020) .......... 9

*Thakur v. Trump*,
No. 25-4249, 2025 WL 2414835 (9th Cir. Aug. 21, 2025) .......... 1, 4

*Tootle v. Secretary of Navy*,
446 F.3d 167 (D.C. Cir. 2006) .......... 4

*United States v. Testan*,
424 U.S. 392 (1976) .......... 4

*Valeo Intellectual Property, Inc. v. Data Depth Corp.*,
368 F. Supp. 2d 1121 (W.D. Wash. 2005) .......... 11

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) .......... 11

*Washington v. DeVos*,
481 F. Supp. 3d 1184 (W.D. Wash. 2020) .......... 12

*Washington v. United States Department of Transportation*,
2025 WL 1742893 (W.D. Wash. June 24, 2025) .......... 11, 13

*Wolford v. Lopez*,
116 F.4th 959 (9th Cir. 2024) .......... 12

**Statutes**

5 U.S.C. § 306(b) .......... 7

31 U.S.C. § 1120(a)(3) .......... 7



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

31 U.S.C. §§ 6301, et seq. .......... 2

**Rules**

85 Fed. Reg. 49506 (Aug. 13, 2020) .......... 8

Local Rules W.D. Wash. LCR 7(b)(2) .......... 8

**Regulations**

2 C.F.R. § 200.1 (2025) .......... 2

2 C.F.R. § 200.208(d) (2025) .......... 9

2 C.F.R. § 200.208(e) (2025) .......... 9



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

## I. INTRODUCTION

Plaintiff was blindsided by Defendants' actions, which contravene federal regulation, violate the Administrative Procedure Act, and flout the Spending Clause of the U.S. Constitution by terminating awards based on new and unidentified administration "priorities." But changing executive preference cannot override the law. Plaintiff relied on—and Defendants enthusiastically supported—its awards, which aimed to help communities disproportionately affected by the adverse effects of climate change become more resilient. Defendants attempt to deprive Plaintiff of this Court's review—and equitable relief—by mischaracterizing Plaintiffs awards as contracts. They are not. This Court has jurisdiction over Plaintiff's claims that Defendants' unlawfully terminated its awards. Defendants' terminations have irreparably harmed Plaintiff by requiring it to shutter programs, eliminate jobs, and rendering prior work meaningless, among other injuries. Absent preliminary relief, these harms continue. The Court should grant Plaintiff's motion for preliminary injunction.

## II. ARGUMENT

### A. This Court Has Jurisdiction

The Tucker Act "'impliedly forbid[s]' an APA action seeking injunctive and declaratory relief only if that action is a disguised breach-of-contract claim." *Thakur v. Trump*, No. 25-4249, 2025 WL 2414835, at *3 (9th Cir. Aug. 21, 2025) (quotation omitted). Defendants insist Plaintiff seeks "funding that it believes the federal government is obligated to pay under a contract." Dkt. 23, p.5. It does not. Unlike the grants in *Dep't of Educ. v. California,* 145 S. Ct. 966, 968 (2025) and *National Insts. of Health v. Am. Pub. Health Ass'n*, 2025 WL 2415669, at *1 (U.S. Aug. 21, 2025) (*NIH*), neither of Plaintiff's cooperative agreements constitute contracts with the federal government. Thus, Plaintiff's claims cannot "arise out of [such] contracts," Dkt. 23, p.12, and this Court cannot be divested of jurisdiction. *Nat'l Leased Hous. Ass'n v. United States*, 105 F.3d 1423, 1427 (Fed. Cir. 1997).



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

To constitute a contract with the United States, an agreement must "contain[ ] the four required elements of offer, acceptance, consideration, and proper government authority." *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 463 (2019); *see St. Bernard Par. Gov't v. United States*, 134 Fed. Cl. 730, 735 (2017). While ***any*** agreement can be a contract, ***not every*** agreement with the Government ***is*** a contract: "In the context of government contracts…consideration must render a benefit to the government, and not merely a detriment to the contractor." *St. Bernard Par. Gov't*, 134 Fed. Cl. at 735 (quotation omitted). The benefit to the government "must be tangible and direct, rather than generalized or incidental." *Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*, 703 F. Supp. 3d 126, 132 (D.D.C. 2023) (quotation omitted). No such consideration was given here.

The very nature of cooperative agreements, which are legally distinct from both procurement contracts and grants, renders them unlikely to be contracts. Particularly relevant here is the distinction between a grant, "designed for the transfer of property in exchange for performing a public service ***at the behest of the federal government and in its stead,***" and a "cooperative agreement," which similarly involves the transfer of property, but to "perform a public service ***in cooperation with a federal agency***." *Raytheon Company v. United States*, 175 Fed. Cl. 281, 288 (Fed. Cl. 2025) (emphasis added) (citing 31 U.S.C. § 6304-5).[1] Because awardees are not "performing a public service at the behest of the federal government and in its stead," *Raytheon Company*, 175 Fed. Cl. at 288, cooperative agreements are even less likely than grants to confer any benefit on the government.

Under Federal Circuit precedent, any "indirect[ ] benefit" to an agency that results from funding a project to "advance the agency's overall mission" is insufficient to establish consideration. *See Hymas v. United States*, 810 F.3d 1312, 1328 (Fed. Cir. 2016). Public

---

[1] The Federal Grant and Cooperative Agreement Act of 1977, 31 U.S.C. §§ 6301, *et seq.*, "instructs on the appropriate uses of procurement contracts, grant agreements, and cooperative agreements, reflective of the specific relationship between the federal government and the recipient entity." *Raytheon Company*, 175 Fed. Cl. at 288. Defendants' regulations similarly differentiate between "grants" and "cooperative agreements," defining cooperative agreements "consistent with 31 U.S.C. § 6302-6305." 2 C.F.R. § 200.1 (2025).



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

benefits from the work funded do not qualify as "the kind of direct benefit…that would support the finding" of consideration. *St. Bernard Par. Gov't*, 134 Fed. Cl. at 735–36; *cf. Am. Near E. Refugee Aid*, 703 F. Supp. 3d at 133 (cooperative agreement not a contract absent tangible benefits to the federal agency and therefore lacked consideration for CFC jurisdiction). *Anchorage v. United States,* 119 Fed. Cl. 709 (Fed. Cl. 2015), illustrates the sort of direct and tangible benefit to the government required to construe a cooperative agreement as a contract. There, the Federal Circuit held that agreements between a municipality and federal agencies regarding cooperation to build a port were express contracts and not cooperative agreements, and thus could be interpreted as contemplating money damages, despite a statement that the parties would "work cooperatively," because the municipality provided approximately $302 million towards construction. *Id.* at 713-14. The Court specifically noted the "reciprocal nature" of the agreement. *Id.* at 713. Federal Circuit precedent makes clear that a fact-specific inquiry is required to determine whether an individual cooperative agreement is a contract subject to CFC jurisdiction under the Tucker Act. This is true even under *California* and *NIH*, in which neither the parties nor the Court addressed cooperative agreements.[2]

Defendants' choice to use cooperative agreements indicates they did not view Plaintiff's awards as providing direct benefit to the government, but as carrying out a public service through assisting Plaintiff in building climate resilience in Washington. *See Hymas*, 810 F.3d at 1329 (explaining that "[c]ourts should exercise caution" before second-guessing an agency's decision of which type of legal instrument to use). Defendants point to no benefit much less one that is "direct" or "tangible" within the meaning of the CFC's precedents defining a contract—nor could they. Indeed, Defendants made no attempt to explain how

[2] Defendants' reference to Justice Gorsuch's *NIH* concurrence adds no weight to their unexplained position that *NIH* controls. Justice Gorsuch emphasized: it is the Court's "reasoning—its *ratio decidendi*"—that carries precedential weight in future cases. *NIH*, 2025 WL 2415669, at *4 (Gorsuch, J., concurring in part and dissenting in part). Because neither *NIH* nor *California* addressed cooperative agreements or contract formation, there is no reasoning to apply here. *See generally California,* 145 S. Ct. 966; *NIH*, 2025 WL 2415669.

Plaintiff's cooperative agreements satisfy the required elements of a contract and repeatedly—and incorrectly— refer to them as grants in their briefing. *See generally* Dkt. 23.

Neither *California* nor *NIH* addressed instances where, as here, the CFC lacks jurisdiction, and where the CFC lacks jurisdiction, the Tucker Act cannot impliedly forbid Plaintiff's claims. *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health and Human Servs.*, 137 F.4th 932, 939 (9th Cir. 2015). Such a result would be "contrary to common sense" and conflict with "the 'strong presumption favoring judicial review of administrative action' that is embodied in the APA." *Id.; see Tootle v. Sec'y of Navy*, 446 F.3d 167, 176–77 (D.C. Cir. 2006); *cf. Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 190 (2023) (district court should not be deprived of jurisdiction where doing so "could foreclose all meaningful judicial review"). The parties asserting Tucker Act jurisdiction must identify "a substantive right to recover money damages from the United States.…" *United States v. Testan*, 424 U.S. 392, 398 (1976). Defendants fail to do so here.

### B. Plaintiff is Likely to Succeed on the Merits

#### 1. Defendants' Terminations are Reviewable

Defendants' *Lincoln v. Vigil* defense falls flat. A decision is committed to agency discretion only in "those rare circumstances where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). But "[e]ven where statutory language grants an agency unfettered discretion, its decision may nonetheless be reviewed if regulations or agency practice provide a meaningful standard by which this court may review its exercise of discretion." *Thakur*, 2025 WL 2414835, at *4. In *Thakur*, the court applied the termination provision at § 200.340(a) as that standard. *Id*. This Court may apply the same to review whether Defendants' actions are unlawful under 5 U.S.C. § 706(2). Defendants do not contest



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

they are bound by § 200.340.[3] Instead, they conflate terminations with award selections, which Plaintiff does not challenge. Defendants' reliance on *Amica Ctr. for Immigrant Rts. v. U.S. Dep't of Just.,* is misplaced and that case does not displace *Thakur's* binding precedent.

**2. Defendants' Terminations Violate Applicable Regulations**

The court "must defer to the [agency's] interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time" it promulgated the regulation. *Faith Int'l Adoptions v. Pompeo*, 345 F. Supp. 3d 1314, 1330 (W.D. Wash. 2018) (quotation omitted). "Indicia of inadequate consideration include conflicts between the agency's current and previous interpretations, signs that the agency's interpretation amounts to no more than a convenient litigating position, or an appearance that the agency's interpretation is no more than a *post hoc* rationalization advanced by an agency seeking to defend past agency action against attack." *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 830 n. 4 (9th Cir.2012) (en banc) (quotation omitted). All of those indicia are present here.

Defendants claim the disconnect precipitating a termination under § 200.340(a)(4) "can arise from changes on either end" meaning "something happened to the award (e.g., the grantee is no longer the best choice), or something happened at the agency (e.g., the priorities changed)." Dkt. 23, p.13. This conflicts with the plain text, *see* Dkt. 6, p.12-13, is inconsistent with Defendants' prior practice, is plainly a *post hoc* rationalization for Defendants' unlawful actions, and amounts to no more than a convenient litigating position. *Price*, 697 F.3d at 830 n. 4. Even under Defendants' theory of § 200.340(a)(4), agencies must determine an award "no longer effectuates the program goals or agency priorities." Thus, so long as an awardee is advancing program goals and agency priorities and is otherwise complying with the terms and conditions of the award, Defendants lack authority to unilaterally terminate. Defendants'

---

[3] As in its Motion, Plaintiff does not distinguish between versions of Part 200 unless the language of the provision differs and has so noted.



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

example of an awardee that is "no longer the best choice" highlights that their overly-broad interpretation cannot be sustained—nothing in the regulations support that Defendants have authority to stack-rank awardees and swap them out for ones they prefer at their whim. Yet, they posit they can do exactly that.

Defendants' arguments related to § 200.340(a)(3) are equally unavailing. Under that provision, if an awardee voluntarily and partially terminates its award, and the agency determines the remainder of the award "will not accomplish the purposes for which the Federal award was made," the agency may terminate that remaining part. Defendants argue that because § 200.340(a)(4) does not use language similar to § 200.340 (a)(3), it must "call[] for a here-and-now analysis of whether the award *currently* 'effectuates the program goals or agency priorities,' in the present." Dkt. 23,p.14. Defendants explicitly read the words "currently" and "in the present" into the provision. And use of the phrase "no longer effectuates" suggests that the awardee once effectuated ***the*** goals and priorities that it no longer does. *See* Dkt. 6, p.12-13.

If the priorities in § 200.340(a)(4) are ***any*** priorities, as Defendants claim, including priorities Defendants can materialize out of thin air at any time up to the time they terminate, then Defendants' argument there "is even more obviously not surplusage" in § 200.340(a)(3) falls apart. Defendants look no further than the first sentence of the provision, completely ignoring the part to which they otherwise hitch their horse. If Defendants can terminate any time they change priorities, the second half of § 200.340(a)(3) would indeed be surplusage. And the canon against surplusage "is strongest when an interpretation would," as here, "render superfluous another part of the same [regulatory] scheme." *Marx v. General Revenue Corp.*, 568 U.S. 371, 387 (2013).

Plaintiff's interpretation is not "counterintuitive" nor "impossible to square with [the] purpose" of the regulation, even considering OMB's mission. Dkt. 23, p.15. Why would OMB draft a regulation intended to provide agencies unfettered discretion without making that



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

expressly clear? Courts presume agencies do not "hide elephants in mouseholes." *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 203 (5th Cir. 2019). Plaintiff agrees there is "nothing unusual or improper about an agency changing priorities." Dkt. 23, p.15. Defendants may apply new priorities to new awards; but Defendants' position also ignores that agencies cannot change priorities on a whim. S*ee, e.g.*, 31 U.S.C. § 1120(a)(3); 5 U.S.C. § 306(b).

Finally, Defendants' argument that § 200.342 applies only where an agency "initiate[es] a remedy for noncompliance" and the terminations here are "not based on noncompliance," Dkt. 23, p.16, is not supported by the plain text of the regulations. The entire subpart compromising §§ 200.339-343 is titled "Remedies for Non-compliance" and these remedies include termination.

**3. Defendants' Terminations Are Arbitrary and Capricious**

Plaintiff does not ask this Court to "substitute its own policy judgment for that of the agency," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021), nor to "second-guess" Defendants "weighing of risks and benefits," *California v. Azar*, 950 F.3d 1067, 1096 (9th Cir. 2020). Plaintiff only asks this Court to consider "whether the [agency] examined the relevant data and articulated a satisfactory explanation for [its] decision, including a rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 588 U.S. 752, 773 (2019) (quotation omitted).

Defendants' terminations are arbitrary and capricious because they fail to comply with their regulations. *Erie Boulevard Hydropower, LP v. FERC*, 878 F.3d 258, 269 (D.C. Cir. 2017). *See* Dkt. 6, p.11-12. Even assuming Defendants could terminate awards based on new priorities, Defendants failed to adequately identify those priorities. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947). Defendants' *post hoc* explanation that "reducing the cost and size of government and limiting funding to only the most necessary projects" ***are*** the new "agency priorities" on which the terminations were based, Dkt. 23, p.17, conflicts with the record. Efforts to cut spending were identified as a reason for reprioritizing funding to support



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

activities related to still unidentified "programmatic goals and mission priorities." Dkt. 9-6, p.87; Dkt. 10-5, p.300. To the extent Defendants attempt to characterize project-specific performance measures as "agency priorities," Defendants did not explain how Plaintiff's award activities fail to align. *See Dep't of Com. v. New York*, 588 U.S. at 785.

Because Defendants did not—and cannot—provide any rational basis for the conclusions on which they purport to base their terminations, they fail to address this argument at all. *Compare* Dkt. 6, p.16 with Dkt. 23. Defendants' failure to respond is "an admission that the argument has merit." *In re Pac. Mkt. Int'l, LLC, Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1043 (W.D. Wash. 2025) (citing Local Rules W.D. Wash. LCR 7(b)(2)).

Even if it were permissible for Defendants to "chang[e] its course" and base terminations on new priorities, Defendants are "obligated to supply a reasoned analysis for the change." *Sierra Club v. Salazar*, 177 F. Supp. 3d 512, 532-33 (D.D.C. 2016). Defendants' only argument is that "the relevant regulatory language…has always allowed [awards] to be terminated if they no longer effectuate agency priorities." Dkt. 23, p.18. But Defendants provide no examples, nor evidence, of awards terminated such a manner and ignore that the regulation codified § 200.340 is "linked to ***performance goals of the program*** (§ 200.301)." 85 Fed. Reg. 49506, 49507 (Aug. 13, 2020) (emphasis added).

Defendants do not contend they considered Plaintiff's serious, good-faith reliance interests. Instead, Defendants cite one case, which is not controlling, *see* Dkt. 23, p.18, and fail to address *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30-33 (2020), in which the Supreme Court considered and rejected Defendants' argument. Disclaimers may go to the "strength of any reliance interests," but agencies still must consider them. *Id.* at 31.

**4. Defendants' Terminations Violate the Spending Clause**

Defendants ignore binding precedent to assert they may use new priorities to terminate awards. They may not. *See City of Los Angeles v. Barr*, 929 F.3d 1163, 1176 (9th Cir. 2019) (implementation of new priorities for a new competition did not violate Spending Clause



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

because priorities were in application guidelines and applied prospectively). Defendants' new priorities were not in the notices of opportunity for funding and cannot be applied retroactively as a basis for termination.

Defendants cite *State v. DOJ*, 951 F.3d 84, 110 (2d Cir. 2020), and *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 666 (1985), to suggest they have merely clarified an ambiguous regulation that applied to Plaintiff and Plaintiff was aware it applied to them. In both cases, the plaintiffs contested the application of the law itself. 951 F.3d at 99 (arguing against application of 8 U.S.C. § 1373); 470 U.S. at 662 (arguing against application of Title I requirements). Here, the regulation itself does not violate the Spending Clause. As Plaintiff alleges in its motion, the new conditions ***are*** the new priorities. Dkt. 6, p.17-18. Under § 200.208, agencies may add new conditions in specifically delineated circumstances not applicable here (e.g., where there is a history of compliance or performance issues). *See* 2 C.F.R. § 200.208(d) (2025). First they must notify the awardee of, among other things, the nature of the condition, the reason it is being imposed, and the time allowed for compliance—for constitutional reasons. *Id.* Such conditions "must be promptly removed once the conditions that prompted them have been satisfied," *id.* § 200.208(e), and thus cannot be used as a basis for termination absent awardee non-compliance. If Defendants had notified Plaintiff of new conditions (and met the other requirements of § 200.208), there would be no Spending Clause issue. It follows then that new priorities cannot be impermissibly vague—they must "clarify what conduct is proscribed," not serve as an excuse to terminate as they please. *See San Francisco Unified Sch. Dist. v. AmeriCorps*, 25-CV-02425-EMC, 2025 WL 1713360, at *18 (N.D. Cal. June 18, 2025). Here, Defendants' termination notices arbitrarily and capriciously used vague references to new priorities to terminate Plaintiff's awards in violation of the Spending Clause.

Defendants' argument that the termination regulation disposes of Plaintiff's Spending Clause claim, Dkt. 23, p.27, demonstrates Defendants' new interpretation of its termination regulation is constitutionally impermissible. To the extent Defendants' interpretation violates



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

the Constitution, it may not be abided by the Court. It is a "cardinal principle" of statutory interpretation that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, [courts shall] construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988). The same preclusive effect of the constitutional avoidance doctrine holds for regulatory interpretation. *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1163 (9th Cir. 2004). Defendants' novel interpretation of its termination regulation may not override the Constitution.

### C. Plaintiffs Face Irreparable Harm

Defendants' argument that Plaintiff's harm is "economic" and therefore not irreparable ignores controlling case law recognizing economic injuries are irreparable when damages are not available. *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021). Defendants also ignore the many intangible harms Plaintiff suffers, which courts consider irreparable. *See id.,* 993 F.3d at 677; *see* Dkt. 6, p.23 (describing harms to goodwill, reputation, and workforce efforts). Plaintiff has not hypothesized that these harms will occur—they have occurred, and will continue absent preliminary relief. Defendants claim that Plaintiff's harms are "definitionally not irreparable" conflicts with binding case law. *See* Dkt. 23, p.9; *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1324 (9th Cir. 1994); *see id.* at n.5 (irreparable harm where plaintiff alleged "prospective loss of reputation"); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.* 944 F.2d 597, 603 (9th Cir. 1991) ("intangible injuries, such as damage to ongoing recruitment efforts and goodwill" are irreparable harm).[4]

Defendants' assertion that Plaintiff cannot demonstrate irreparable harm because it does not allege "threat of being driven out of business" is similarly unavailing. Dkt. 23, p.9. Plaintiff—the State of Washington—is not a business. Threats to the existence of or

---

[4] *Faculty Senate of Fla. Int'l Univ. v. Winn,* 477 F. Supp. 2d 1198, 1208 (S.D. Fla. 2007), is not controlling and because it relates to "temporary loss of income, ultimately to be recovered" is also not instructive.

termination of programs that harm Plaintiff's organizational missions are sufficient to constitute irreparable. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (harm to organizational missions irreparable); Dkt. 6, p.20-21.

Defendants similarly misconstrue *Sampson v. Murray*, 415 U.S. 61 (1974). Unlike in that case, Plaintiff does not allege harms based on "time, effort, and non-federal funds" expended ***after*** the challenged action. Plaintiff will suffer irreparable losses based on expenditures in service of carrying out award activities ***before*** Defendants' terminations rendered those expenditures meaningless. *See* Dkt. 6, p.21-22.

The timing of Plaintiff's filing does not foreclose preliminary relief and none of the cases Defendants cite compel that result. *See NLRB v. Cal. Pac. Med. Ctr.,* 991 F.2d 536, 544 (9th Cir. 1993) (delay exceeded eight months); *Valeo Intellectual Prop., Inc. v. Data Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) (evidence revealed plaintiff likely knew about termination of licensing agreement approximately six months before filing lawsuit then waited an additional three months to seek preliminary relief); *Newdow v. Bush,* 355 F. Supp. 2d 265, 292 (D.D.C. 2005) (delay "placed defendants and the federal courts in a difficult position" because the preliminary relief sought "would constitute the ultimate relief...with respect to the 2005 Inauguration," which was just one month away).

Here, Plaintiff had no indication Defendants would terminate its awards, nor that Defendants deny their right to object. Because "the magnitude of the potential harm [became] apparent gradually," it was "prudent" to file after confirming the effect of Defendants' unlawful actions. *ARC of California v. Douglas*, 757 F.3d 975, 990-91 (9th Cir. 2014); *see also Washington v. U.S. DOT*, 2025 WL 1742893, at *26 (W.D. Wash. June 24, 2025) (granting injunction despite 12-week delay, noting courts are "loath to withhold relief solely on that ground").



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

**D. The Balance of Equities Favor an Injunction**

The balance of equities and public interest compel an injunction. *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024). "There is generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Washington v. DeVos*, 481 F. Supp. 3d 1184, 1197 (W.D. Wash. 2020). The tremendous harm Defendants' terminations have caused and will continue to cause Plaintiff far outweighs Defendants' alleged interests in unlawfully-exercised discretion.

Defendants rely on *California* but fail to address both parts of the Court's reasoning. The Court indeed noted "respondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed." *California*, 145 S. Ct. at 969. That was not the end of the analysis. The Court expressly contrasted this against its opinion that the government had compellingly argued "respondents would not suffer irreparable harm[,]" explaining that respondents had "the financial wherewithal to keep their programs running" and could, if they prevailed, "recover any wrongfully withheld funds." *Id.* Here, the government has made no compelling argument that Plaintiff will not suffer irreparable harm, and Plaintiff lacks the financial wherewithal to keep the affected programs running. In *NIH*, the Court opined, with respect to the government's potential harm: "[W]hile the loss of money is not typically considered irreparable harm, that changes if the funds cannot be recouped and are thus irrevocably expended." 2025 WL 2415669, at *1 (quotation omitted). That cuts both ways—the amounts at issue here pale in comparison, from Defendants' perspective, to the amounts at issue in *California* and *NIH*. But to Plaintiff, those amounts mean the difference between operating well-planned and beneficial programs and the irreparable losses described in its Motion. Dkt. 6, p.19-24.



ATTORNEY GENERAL OF WASHINGTON
Environmental Protection Division
800 Fifth Avenue STE 2000
Seattle, WA 98104
(206) 464-7744

**E. No Bond or Stay Should Issue**

"Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (cleaned up). No bond requirement should issue here where Plaintiff's harm substantially outweighs harm to Defendants. *Cf. Washington v. U.S. DOT*, 2025 WL 1742893, at *31. The Court should also deny Defendants' cursory request to stay the preliminary injunction because Defendants fail to address, and in any event would not be able to meet, any of the stay factors.

## III. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion.

Dated this 19th day of September, 2025.

I certify that this memorandum contains 4,181 words, in compliance with the Local Civil Rules.

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

*s/ Caitlin M. Soden*
CAITLIN M. SODEN, WSBA # 55457
LEAH A. BROWN, WSBA # 45803
ELLEN RANGE, WSBA #51334
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104
(206) 464-7744
caitlin.soden@atg.wa.gov
leah.brown@atg.wa.gov
ellen.range@atg.wa.gov

*Attorneys for the State of Washington*